

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0245-15

**JUAN BLEA, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### DENTON COUNTY

**ALCALA, J., delivered the opinion for a unanimous Court.**

## O P I N I O N

In its sole ground in its petition for discretionary review, the State contends that the court of appeals erred by reversing the conviction of Juan Blea, appellant, for first-degree aggravated assault of a family member against his then-girlfriend, Justina Fassett. *Blea v. State*, No. 02-13-00221-CR, 2015 WL 510954, at *1 (Tex. App.—Fort Worth Feb. 5, 2015, pet. granted). The State challenges the court of appeals's determination that the evidence was legally insufficient to establish the element of "serious bodily injury." TEX. PENAL CODE § 22.02(b)(1). The State asserts that, in deciding whether appellant caused serious bodily

injury to Fassett, the court of appeals should have examined the injuries as they were inflicted by appellant, rather than assessing the injuries in their improved or ameliorated condition after medical treatment.[1]  We agree with the State.  In light of the evidence showing that appellant's actions lacerated Fassett's liver and collapsed her lung; that Fassett was taken to the hospital due to her trouble breathing; that she was hospitalized for four days; that her lung injury required a tube to permit breathing; and in light of the testimony describing her risk of death from the type of injuries that she sustained, the jury could have rationally inferred that Fassett's injuries caused her a substantial risk of death.  Concluding that the evidence is legally sufficient, we reverse the judgment of the court of appeals, and we reinstate the trial court's judgment against appellant.

## I. Background

Appellant lived with his parents and Fassett until he moved out of their shared apartment in early July 2010.  Later that month, appellant went to the apartment to visit Fassett and their baby daughter.  During the visit, appellant noticed a "hickey" on Fassett's neck, and he asked about it.  Appellant became angry when Fassett reported getting the mark from a man the night before, and he told her that he was going to kill her.  He hit Fassett in the face with his hand one time, using either an open or closed fist, causing her to fall down.  Fassett then went into another room to put their daughter to bed.  Upon her return to the

---

[1] The State's petition asks, "Did the Second Court of Appeals improperly apply the standard for reviewing the sufficiency of the evidence in analyzing whether the complainant suffered serious bodily injury?"

living room, appellant hit Fassett's body on her side, and he struck her more than once with his open hand and closed fist. Fassett was unable to specifically describe how appellant hit her, saying that he may also have kicked her. When the baby woke up, appellant left the apartment to buy diapers. Upon his return to the apartment, the couple argued again before he left.

Fassett stated that, after the assault, she had been in "a lot" or "a ton" of pain in her back and her chest. She also said that she felt like something had been broken or terribly injured during the assault. When appellant's parents returned to the apartment at Fassett's request, they observed that Fassett was "hurting." She told them that she had fallen down the stairs, but they did not believe her, and they called the police.

The responding officer saw Fassett's condition after the assault. He recalled that, when she tried to stand up, "she fell back to the couch in pain." The officer observed that she had visible injuries to her face in that the area under one eye was bruised and had a cut on it, and she had other scrapes to her face. She also had redness to her arm and early bruising. The officer noted that Fassett had one arm holding her ribs, her chest, and her stomach area. After hearing Fassett say that she was having a hard time breathing and was in a lot of pain, the officer called an ambulance.

Fassett was admitted into a hospital where she remained for four days, during which time she was treated for a collapsed lung with the insertion of a chest tube. Her injuries additionally included a lacerated liver, two rib fractures, and a fractured maxillary sinus bone.

Due to these injuries, Fassett was unable to return to work for approximately a month. Appellant was charged and convicted of first-degree aggravated assault of a family member for causing Fassett serious bodily injury by using a deadly weapon.

Finding that the evidence failed to establish that Fassett suffered serious bodily injury, a majority of the court of appeals held that the evidence was legally insufficient to establish first-degree aggravated assault against a family member, and it remanded for a new punishment hearing on the lesser offense of second-degree aggravated assault. *Blea*, 2015 WL 510954, at *1. The court's majority explained that the evidence that Fassett had a collapsed lung and lacerated liver failed to show that she faced a substantial risk of death, and, thus, serious bodily injury was not established on that basis. *Id*. at *5. Similarly, the court's majority found no evidence that Fassett suffered protracted loss or impairment of the function of a bodily member or organ, which could have been an alternative basis for upholding the jury's finding that there was serious bodily injury. *Id*. The court's majority reasoned that, although there was testimony from a treating nurse that an injury to a person's liver can result in her bleeding to death and that a patient with a collapsed lung can die from an inability to breathe, that evidence did not establish that Fassett had serious bodily injury. *Id*. The Court's majority explained that the treating nurse testified that "the complainant had a collapsed lung, but it had already been treated when [she] met the complainant[.]" *Id*. at *4. The court's majority determined that, even though Fassett had injuries to her liver and to her lung, and even though it is possible for someone with those injuries to die from them,

there was no evidence that Fassett's injuries created a substantial risk of death. *Id*. at \*4-5. The court's majority explained that bodily injury cannot be elevated to serious bodily injury by postulating potential complications that are not in evidence. *Id*. at \*3. One justice dissented, concluding that the evidence was legally sufficient to establish serious bodily injury because, if Fassett's injuries had been left untreated, she would have faced a substantial risk of death from her injuries, and she would have suffered protracted loss or impairment of the function of a bodily member or organ. *Id*. at \*7-8.

## II. Analysis

The State challenges the reasoning of the court of appeals's majority opinion by asserting that Fassett had serious bodily injury based on the evidence that (1) appellant caused Fassett to have a substantial risk of death and/or (2) he caused her protracted loss or impairment of the function of a bodily member or organ. The State explains that the jury could have inferred these consequences from the totality of the evidence describing Fassett's injuries to her liver and lung. We agree with the State as to the first alternative, and therefore, we need not address the second alternative for upholding the jury's finding on the element of serious bodily injury.

### A. Applicable Law for Sufficiency of the Evidence for Aggravated Assault

We review the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). We view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the elements of

the offense beyond a reasonable doubt. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). The "jury is the sole judge of credibility and weight to be attached to the testimony of witnesses." *Id*. "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination." *Id.*

We agree with the court of appeals's description of the elements of first-degree aggravated assault of a family member as requiring evidence that the actor used a deadly weapon during the commission of the assault, and as further requiring proof that the actor caused serious bodily injury to a family member. *See* TEX. PENAL CODE § 22.02(b)(1). We also agree with the court of appeals's reliance on the Penal Code's definition for "serious bodily injury" as being "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46). We part with the court of appeals's majority, however, in its decision to weigh the effects of any medical treatment in its determination that the evidence failed to establish the element of "serious bodily injury."

**B. Applicable Law for Evidence Sufficiency on Serious Bodily Injury**

In deciding whether the evidence showed that there was a substantial risk of death from an injury, the court of appeals split in its assessment of whether it was proper to consider the effects of the medical treatment received by Fassett. The court of appeals's majority considered the evidence of Fassett's injuries after medical treatment, whereas the

dissenting opinion considered the evidence of her injuries as inflicted by appellant before her treatment. This split in the court of appeals is understandable, perhaps, in light of a slight inconsistency in this Court's precedent regarding the proper analysis under these circumstances. On the one hand, the vast majority of decisions from this Court have held that the relevant inquiry is the degree of risk posed by the injury as it was inflicted without regard to the positive effects of medical treatment. *Brown v. State,* 605 S.W.2d 572, 575 (Tex. Crim. App. 1980). In *Brown*, the specific issue was whether the complainant's broken and deformed nose could qualify as "serious bodily injury" under either the "serious permanent disfigurement" or the "protracted . . . impairment of the function of any bodily member or organ" alternatives, when the bone had been successfully set through medical treatment, thereby preventing disfigurement and impairment of function. *Id.* This Court held that the *Brown* complainant's broken and deformed nose could be fairly categorized as serious bodily injury, reasoning that "[t]he relevant issue was the disfiguring and impairing quality of the bodily injury as it was inflicted, not after the effects had been ameliorated or exacerbated by other actions such as medical treatment." *Id*. In *Stuhler v. State*, this Court observed that it has "long held that in assessing the sufficiency of the evidence to establish serious bodily injury, the question is the degree of risk of death that the injury caused, or the disfiguring or impairing quality of the injury, 'as it was inflicted, not after the effects had been ameliorated or exacerbated by other actions such as medical treatment.'" 218 S.W.3d 706, 714 (Tex. Crim. App. 2007) (quoting *Fancher v. State*, 659 S.W.2d 836, 838 (Tex. Crim. App. 1983));

*see also Webb v. State*, 801 S.W.2d 529, 532 (Tex. Crim. App. 1990) (citing *Brown* for the proposition that the relevant inquiry is the degree of risk posed by the injury as inflicted, not after the effects have been ameliorated or exacerbated by medical treatment).[2]

On the other hand, in a single case, a plurality of this Court held the contrary position that it is appropriate to consider whether a victim had a substantial risk of death after taking into consideration the effects of medical treatment on the injury. *Moore v. State*, 739 S.W.2d 347, 353-54 (Tex. Crim. App. 1987). In *Moore v. State*, the jury found Moore guilty of aggravated assault by causing serious bodily injury by stabbing his victim. *Id*. Reasoning that "[p]rofessional medical attention and treatment is a fact of modern life," a plurality of this Court determined that it was appropriate to consider whether, after medical treatment, the victim faced a substantial risk of death. *Id*. at 354. The plurality opinion explained, "[I]t appears likely that the Legislature intended that bodily injuries which create a 'substantial risk of death' should be understood to mean only those injuries for which a substantial risk of death exists even if treated promptly according to accepted medical practice, when and to the extent that medical treatment is available at the time of the injury." *Id*.

For three reasons, we disavow this portion of *Moore*. First, under the plain language

---

[2] The *Brown* standard has also been followed by intermediate courts of appeals in Texas. *Jackson v. State*, 399 S.W.3d 285, 291 (Tex. App.—Waco 2013, no pet.); *Sizemore v. State*, 387 S.W.3d 824, 828 (Tex. App.—Amarillo 2012, pet. ref'd); *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *Wilson v. State*, 139 S.W.3d 104, 106 (Tex. App.—Texarkana 2004, pet ref'd); *Nash v. State*, 123 S.W.3d 534, 539 (Tex. App.—Fort Worth 2003, pet. ref'd); *Hernandez v. State*, 946 S.W.2d 108, 113 (Tex. App.—El Paso 1997, no pet.); *Barrera v. State*, 820 S.W.2d 194, 196 (Tex. App.—Corpus Christi 1992, pet. ref'd).

in the definition for "serious bodily injury," the question is whether the injury "creates a substantial risk of death." TEX. PENAL CODE § 1.07(a)(46). The statute's plain language refers to the injury caused by the offender, and it does not require consideration of any medical treatment that may have lessened the impact of the injury. Second, *Moore* is an isolated case that is inconsistent with the numerous other holdings by this Court that consider the risk of death as inflicted by a defendant without modification by the additional consideration of the effects of medical treatment. Third, *Moore* is a plurality opinion from 1987, with six judges concurring, and it is therefore not binding precedent. *See Unkart v. State*, 400 S.W.3d 94, 100 (Tex. Crim. App. 2013) ("Plurality opinions do not constitute binding authority."). Therefore, to the extent that *Moore* is in conflict with our other precedent, we now disavow that case.

We hold that, in determining whether a bodily injury creates a substantial risk of death, a court should apply the *Brown* standard that considers the disfiguring and impairing quality of the bodily injury as it was inflicted on a complainant by an offender. *Brown*, 605 S.W.2d at 575. Accordingly, when evaluating the sufficiency of the evidence to determine whether there was a serious bodily injury, an appellate court should not consider the amelioration or exacerbation of an injury by actions not attributable to the offender, such as medical treatment. *See id*.

**C. Analysis**

By focusing on the risk of death after medical treatment rather than as it had been

caused by appellant, the court of appeals's majority misapplied the law to the facts. Viewing the evidence in a light most favorable to the jury's implicit finding that Fassett faced a substantial risk of death from her injuries, the evidence is legally sufficient to establish first-degree aggravated assault.

The jury could have rationally determined that Fassett's injuries created a substantial risk of her death. When she had trouble breathing, Fassett was taken by ambulance to a hospital, where a tube was inserted into her lungs in order to permit her to breathe. Fassett's nurse described this kind of lung injury as a serious injury because lungs control breathing, which is necessary to sustain life, and she said that lung injuries such as these can affect a person's blood pressure and "vital signs." Additionally, the State presented evidence showing that Fassett had a lacerated liver. The nurse described a lacerated liver as a serious injury that could cause a patient to "bleed to death very quickly." Fassett's injuries required her hospitalization for multiple days and she was unable to return to her regular work for weeks. In light of this evidence, the jury could have rationally inferred that there was a substantial risk of Fassett's death from the totality of her injuries. We further observe that serious bodily injury may be established without a physician's testimony when the injury and its effects are obvious. *See Sizemore v. State*, 387 S.W.3d 824, 828 (Tex. App.—Amarillo 2012, pet. ref'd). We conclude, therefore, that the evidence was sufficient to show that the injuries appellant inflicted upon Fassett resulted in a substantial risk of death to her, and thus, constituted serious bodily injury. TEX. PENAL CODE § 1.07(a)(46). Having determined that

appellant caused a substantial risk of death to Fassett, we need not address the other alternative ways that serious bodily injury may be proven. *See id*. (serious bodily injury may be proven by evidence of bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ).

### III.  Conclusion

Having concluded that a jury rationally could have determined that appellant's actions caused injuries to Fassett's lung and liver causing her a substantial risk of death, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court.


Delivered: February 10, 2016

Publish