

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00233-CR

JOE ANGEL LOPEZ                                               APPELLANT

V.

THE STATE OF TEXAS                                                STATE

----------

### FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
### TRIAL COURT NO. 1455366D

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Joe Angel Lopez contends in one issue that the evidence presented at trial was insufficient to support his conviction for the murder of Bianca Jimenez. Because eyewitness testimony and circumstantial evidence

---

[1]*See* Tex. R. App. P. 47.4.

both readily support the jury's guilty verdict beyond a reasonable doubt, we affirm.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On April 23, 2016, Alexis Ortiz and Bianca went out for drinks at a bar in Fort Worth. While there, Bianca received texts from Anna Ramos containing nude photographs of Bianca's ex-boyfriend, Joseph David Rodriguez (nicknamed "Loke"), and Anna. Angered, Bianca decided to drive to Loke's house on Selene Street to "beat [Anna] up."

Alexis and Bianca left the bar around 1:00 a.m., and Alexis drove Bianca's car to Selene Street (despite Alexis having admittedly consumed ten beers at the bar) because Bianca was in worse shape. Loke and Anna lived in the Selene Street house with James Pointer (nicknamed "Token"), and the three of them and a fourth person named Rob had spent the night at home drinking.

Upon arriving at Loke's house, Alexis and Bianca scratched Anna's car and attempted to break its rear window. Discovering that the car was unlocked, the two of them opened one of its doors and stole makeup out of some purses that they found inside. Satisfied with their theft and vandalism, they returned to Bianca's car, honked the horn, and sped away. Loke emerged from his house as they left, pursued them in Anna's car, and shot at them but missed.

When the chase reached Harding Street, Loke managed to pull Anna's car in front of Bianca's car, blocking it in. Alexis, in a bid to escape, rammed Bianca's car into Anna's and successfully positioned it for an escape. Bianca,

still reeling over the nude photographs of Loke and Anna, emerged tearstained from the car and punched Loke in the face; he did not retaliate. Alexis intervened at this point, put Bianca back in the car, and drove away from the scene.

Still angry, Bianca again decided that she wanted to fight Anna, so Alexis drove them back to Selene Street. Meanwhile, Bianca's first visit to Loke's house had scared Anna, so she had called Appellant to come pick her up from Loke's house. Appellant asked his friend, Emilio Albarado, to drive him to Selene Street, and Emilio assented.

When Alexis and Bianca returned to Selene Street, they came across Emilio's car going in the opposite direction, with Emilio driving and Appellant in the passenger seat. As the cars stopped next to one another with the passenger sides closest to each other, Appellant told Bianca and Alexis that if they did not leave the street, he would shoot them. Bianca exited her car, and standing by her passenger door, yelled at Appellant that she and Alexis could "do whatever [they] want[ed]." Alexis testified that she saw Appellant shooting at Bianca immediately after Bianca responded to his threat.

Emilio had grown uncomfortable with the escalating confrontation, but just as he told Appellant that they should leave and began pulling away, he heard a gunshot from where Appellant was sitting in the car. Directly afterward, Appellant told Emilio that he was only trying to scare the girls, which Emilio testified that he took to mean that Appellant did not intend to shoot Bianca.

3

Bianca sustained a bullet wound to her lower abdomen, fell to the ground, and died later that day from blood loss and vascular damage.

Throughout the incident, Token, who had also called Appellant for a ride but after Anna did, was on the phone with Appellant. Token testified that he heard the entire argument, recognized Appellant's and Bianca's voices, and heard the gunshot as well. Waiting with Token at Loke's house, Anna overheard this phone call and testified that she overheard Appellant and Bianca's argument followed by a gunshot.

Appellant was charged and a jury found him guilty of murder and assessed his punishment at forty years' imprisonment. The trial court sentenced him accordingly. In his sole point, Appellant asserts that the evidence was insufficient to support his conviction.

### III. ANALYSIS

**A. The *Jackson* Sufficiency Standard Applies Equally to Direct and Circumstantial Evidence.**

In our due-process review of the sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to

4

draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Jenkins*, 493 S.W.3d at 599.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49; *see Blea*, 483 S.W.3d at 33. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Jenkins*, 493 S.W.3d at 599.

**B.   The Texas Penal Code Defines Murder and Its Requisite Mental States.**

Section 19.02(b) of the Texas Penal Code provides that a person commits murder if he:

(1) intentionally or knowingly causes the death of an individual;

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or

(3) commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

Tex. Penal Code Ann. § 19.02(b) (West 2011).

In Texas, "[a] person acts intentionally, or with intent, [concerning] the nature of his conduct or . . . a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *Id.* § 6.03(a). Moreover, "[a] person acts knowingly, or with knowledge, [concerning] a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id.*

In three paragraphs, the grand jury indicted Appellant with murder under all three statutory alternative manners and means, and the jury was charged on all three alternatives as well. *See id.*

## C. Sufficient Evidence Supports the Jury's Finding that Appellant Committed Murder.

In his sole point, Appellant contends that the evidence was insufficient to support his murder conviction and that no rational trier of fact could identify him as the shooter. The record before us, when viewed in the light most favorable to the jury's verdict, compels the opposite conclusion. *See Murray*, 457 S.W.3d at 448.

*First*, Appellant argues that Alexis was an unreliable witness and as such, her testimony should be discounted. However, an eyewitness's testimony has

6

time and again provided sufficient evidence to support a jury's verdict. *See, e.g.*, *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); *Farr v. State*, No. 02-16-00220-CR, 2017 WL 1089692, at *3 (Tex. App.—Fort Worth Mar. 23, 2017, no pet.) (mem. op., not designated for publication). Despite this, Appellant argues that Alexis's testimony should be accorded no weight because she was under the influence of drugs and alcohol at the time of the incident. While this certainly may bear on a witness's testimony, it is solely in the jury's purview to determine a witness's credibility. *See Blea*, 483 S.W.3d at 33; *Vasquez v. State*, 67 S.W.3d 229, 237 (Tex. Crim. App. 2002) (holding that a rational jury could believe eyewitness had accurately identified defendant despite witness's use of narcotics); *Cain v. State*, 958 S.W.2d 404, 409 (Tex. Crim. App. 1997) (holding that the weight given to an alcoholic witness's intoxicated state is a matter solely within the jury's purview). Here, the jury found Alexis's testimony believable, either on its own or in combination with Token's, Emilio's, and Anna's. Moreover, Fort Worth Police Officer John Mitchell testified at trial that Alexis was capable of giving reliable information on the night of the shooting. We therefore defer to the jury and reject this argument. *See Murray*, S.W.3d at 448–49.

*Second*, Appellant argues that Emilio was the shooter but provides no evidence to support his claim. Detective Jeremy Rhoden testified that Alexis told him that she recognized Appellant in the passenger seat of Emilio's car as it passed her on Selene Street but that she also told him that she looked away when the gun fired. Alexis testified, however, that she saw Appellant shoot at

7

Bianca. Emilio also testified that Appellant fired the gun. No one other than Emilio, Appellant, Bianca, and Alexis was present at the incident. Appellant, in Emilio's passenger seat, was in the best position to shoot Bianca—indeed, he had told Bianca that he would shoot her if she did not leave. Token and Anna, both listening in on that evening's events over the phone, testified to hearing the argument and the gunshot. The witnesses' testimony provided a sufficient evidentiary basis for a rational jury to conclude beyond a reasonable doubt that Appellant intentionally or knowingly shot and killed Bianca. *See Jackson*, 443 U.S. at 316, 99 S. Ct. at 2789; *Jenkins*, 493 S.W.3d at 599; *Blea*, 483 S.W.3d at 33. It is not the Court's place to second-guess a trier of fact. *See Montgomery*, 369 S.W.3d at 192. We therefore reject Appellant's remaining argument and overrule his sole point. *See Murray*, 457 S.W.3d at 448–49.

## IV. CONCLUSION

Having overruled Appellant's sole point, we affirm the trial court's judgment.

/s/ Mark T. Pittman
MARK T. PITTMAN
JUSTICE

PANEL: SUDDERTH, C.J.; MEIER and PITTMAN, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 12, 2018