

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-17-00240-CR

---

FERNANDO ZAMORA                                              APPELLANT

V.

THE STATE OF TEXAS                                                STATE

----------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1432653D

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Fernando Zamora of three counts of aggravated sexual assault of a child younger than fourteen years of age, and the trial court sentenced him to thirty years' confinement for each count, with the sentences to be served concurrently. In Appellant's sole issue, he ostensibly challenges the sufficiency of the evidence to support his convictions; however, as the State

---

[1]*See* Tex. R. App. P. 47.4.

points out, his arguments do not attack the quantum of proof but its credibility. Because the evidence sufficiently supports his convictions, we affirm.

## I.     BRIEF SUMMARY

In the summer of 2015, I.V., the complainant, made an outcry of aggravated sexual assault to her mother (Mother) against Appellant, one of Mother's former boyfriends. The alleged sexual abuse occurred several years earlier when I.V. was six or seven years old. Mother notified the police, a forensic interviewer interviewed I.V., I.V. had a complete examination at Cook Children's Hospital, and a grand jury indicted Appellant, charging that he committed three counts of aggravated sexual assault of I.V., a child younger than fourteen years of age—by penetrating her mouth with his sexual organ (Count One), by causing her sexual organ to contact his (Count Two), and by digitally penetrating her sexual organ (Count Three). After hearing testimony from I.V., Mother, the detective in charge of the case, the forensic interviewer, and the medical director of the child abuse program at Cook Children's Hospital, and after viewing I.V.'s forensic interview, the jury found Appellant guilty of all three counts.

## II.     STANDARD OF REVIEW

In our due-process review of the sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.

2

307, 319, 99 S. Ct. 2781, 2789 (1979); *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Jenkins*, 493 S.W.3d at 599.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49; *see Blea*, 483 S.W.3d at 33.

### III.    APPLICABLE LAW

The indictment charged Appellant with committing the three counts of sexual abuse against I.V. on or about November 1, 2008. At that time, the relevant portions of section 22.021 of the Texas Penal Code provided that a person commits aggravated sexual assault of a child under fourteen if he

3

intentionally or knowingly:

> (i) causes the penetration of the . . . sexual organ of a child by any means;

> (ii) causes the penetration of the mouth of a child by the sexual organ of the actor; [or]

> (iii) causes the sexual organ of a child to contact or penetrate the . . . sexual organ of another person, including the actor[.]

Act of May 28, 2003, 78th Leg., R.S., ch. 528, § 2, 2003 Tex. Gen. Laws 1805, 1806–07 (amended 2017) (current version at Tex. Penal Code Ann. § 22.021(a)(1)(B), (2)(B) (West Supp. 2017)). A complainant's uncorroborated testimony of sexual abuse suffered as a child, standing alone, can support a conviction. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1) (West Supp. 2017); *Bazanes v. State*, 310 S.W.3d 32, 40 (Tex. App.—Fort Worth 2010, pet. ref'd).

## IV.    I.V.'S TESTIMONY

### A.    I.V. Testified About Appellant's Specific Acts in Concrete Terms Defined for the Jury.

Testifying in the summer after her freshman year of high school, I.V. identified Appellant as the perpetrator of sexual abuse against her. I.V. testified that:

- When her little brother, Appellant and Mother's son, was one year old and she was six or seven years old, the two children were visiting Appellant;

- I.V. believed they spent the night;

- The room was dark or seemed dark;

4

- I.V. could not see anything;

- Appellant and her brother were on the bed, and she lay on the carpeted floor as Appellant instructed;

- After her brother went to sleep, Appellant joined her on the floor;

- Appellant told I.V. to take her clothes off, and she did;

- Appellant removed his clothes;

- Then Appellant began "[t]ouching [her] all over" with his "thing," which I.V. clarified was the "private part" with which he "pee[d]";

- Appellant touched her mouth with his "thing" and put his "thing" inside her mouth;

- Appellant touched her "private part," which she called "cookie" and "middle part," with his "thing" and put his "thing" inside her "private part," which hurt;

- Appellant also touched her "private part" with his hand, put his finger inside it, "pushed it up," and "[p]ressed up," hurting her;

- Appellant further touched her "private part" with his mouth and licked it;

- After Appellant penetrated her sexual organ with his penis from behind, he pulled out and told her to wait "because something spilled and he was cleaning [her]" back;

- I.V. knew at trial that Appellant was wiping off his ejaculated fluids but did not know that when the sexual assault occurred;

- After the sexual assault, she was allowed to put her clothes on and go back to sleep;

- Appellant told her not to tell anyone about the sexual abuse or he would hit her;

- When Mother picked I.V. up and noticed her shirt was on backward, I.V. told Mother that Appellant had loaned her clothes, which he had told her to say;

5

- Appellant also told I.V. to say that her clothes were different because she showered; and

- I.V. did not tell Mother about the sexual abuse when Mother picked her up from Appellant's home because she was afraid of Appellant.

**B.** **Although She Remembered the Specific Things Appellant Did to Her, I.V. Did Not Remember Many Details from the Incident or About Appellant.**

I.V. testified that she did not remember:

- Whether she was six years old or seven years old when the sexual abuse occurred;

- Whether the room in which the sexual abuse occurred had windows;

- Whether she was in school, whether it was hot or cold outside, or whether a holiday was near when the offense occurred;

- Whether the sexual abuse occurred during the day or the night;

- When the sexual abuse stopped;

- What kind of shirt she wore on the date of the offense;

- Whether she wore shorts or pants;

- Whether she had complained to Mother about not feeling well after the sexual abuse;

- How long Appellant had lived in his home;

- Whether she went to Appellant's home again after the offense;

- How often she visited him before the offense; and

- When she stopped seeing Appellant or which year she last saw him.

**C.** **I.V. Presented Two Versions of Her Outcry to Mother.**

I.V. also did not remember when she made her outcry to Mother or how old she was at the time of the outcry and testified about two different versions of her

6

outcry to Mother. I.V. testified that more than five years after the offense, she was washing dishes one night, and Mother approached her from behind, scaring her, prompting I.V. to tell Mother what had happened. But I.V. also admitted on cross-examination that she had told CPS that she overheard Mother and her stepfather discussing why Mother and Appellant broke up and that she interrupted their conversation with her outcry.

## V. ANALYSIS

### A. The Missing Details and Conflicting Evidence Do Not Affect the Sufficiency of the Evidence to Support Appellant's Convictions.

In Appellant's challenge, he focuses on the delay of the outcry, the conflicts in the evidence of the circumstances of the outcry, the "major" (but unnamed) discrepancies between the forensic interview and I.V.'s and Mother's testimony, and Mother's motives, given that she and Appellant had a history of domestic violence and that she had applied for a special visa to stay in the United States as a crime victim, identifying him as the perpetrator. However, we are not the judge of the credibility of the evidence. The jury is the sole arbiter of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Blea*, 483 S.W.3d at 33.

### B. I.V.'s Testimony Alone is Sufficient to Support Appellant's Convictions.

Despite I.V.'s inability to remember many details and the conflicting stories of her outcry to Mother, I.V.'s testimony alone, viewed in the light most favorable to the verdicts, is sufficient to support Appellant's three convictions. *First*, her

7

testimony that he put his "thing," which she had identified as the "private part" with which he urinated, in her mouth is sufficient to support his conviction on Count One for aggravated sexual assault of a child by penetration of her mouth with his sexual organ. *Second*, I.V.'s testimony that he touched her "private part"—which she called "cookie" and "middle part"—with his "thing" and that he put his "thing" inside her "private part" is sufficient to support his conviction on Count Two for aggravated sexual assault of a child by causing her sexual organ to contact his. *Third*, I.V.'s testimony that he touched her "private part" with his hand, put his finger inside it, "pushed it up," and "[p]ressed up" is sufficient to support his conviction on Count Three for aggravated sexual assault of a child by digital penetration of her sexual organ. *See* Act of May 28, 2003, 78th Leg., R.S., ch. 528, § 2, 2003 Tex. Gen. Laws 1805, 1806–07; Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Jenkins*, 493 S.W.3d at 599; *Bazanes*, 310 S.W.3d at 40.

**C.     The Other Witnesses and I.V.'s Recorded Forensic Interview Corroborated Her Testimony Satisfying the Offenses' Elements.**

Despite any discrepancies or conflicts, which were within the jury's exclusive province to resolve, *see* Tex. Code Crim. Proc. Ann. art. 38.04; *Blea*, 483 S.W.3d at 33, the other witnesses and I.V.'s forensic interview corroborated her firsthand account as to the elements of the charged offenses. *First*, Mother's testimony that I.V. told her that Appellant "on several occasions had put his private part on her mouth and her parts," which Mother clarified meant I.V.'s

8

mouth and sexual organ, corroborated I.V.'s testimony specifically as to Counts One and Two. *Second*, the testimony of Fort Worth Police Detective Amelia Heise, who led the investigation, that I.V. told the forensic interviewer that Appellant put his finger inside her "middle part," that he put his "middle part" or "thing" inside her sexual organ, and that he made her put his penis inside of her mouth corroborated I.V.'s testimony specifically as to all three counts, even though Detective Heise never spoke to I.V.

*Third*, the testimony of Dr. Jamye Coffman, the medical director of the CARE Team, which is the child abuse program at Cook Children's Hospital, also corroborated I.V.'s testimony specifically as to all three counts, even though Dr. Coffman did not meet or examine I.V.:

- Dr. Coffman testified that in her patient history, I.V. reported that when she was about six or seven years old and at Appellant's apartment:

  > [H]e told her to take her clothes off. She . . . was sleeping on the floor and he was asleep on the bed with her little brother. And after her little brother went to sleep, he told her to take her clothes off and he laid next to her from her back and then he stuck his finger in her front part and then he stuck his thing, his penis, in her front from behind. . . . He also stuck his thing in her mouth . . .";

- The checklist of "yes-no" questions indicated "penis/vagina" and "finger/vagina" in the "vaginal contact" section as well as associated pain;

- I.V. indicated in her free narrative and in answering questions for the checklist that "oral copulation of genitals" had occurred regarding both his and her genitals; and

9

- The checklist also affirmed that ejaculation had occurred and an additional note said, "patient's back."

*Fourth*, Samantha Shircliff, the forensic interviewer at Alliance for Children at the Children's Advocacy Center of Tarrant County who interviewed I.V., testified that:

- I.V. could tell the difference between truth and lies in her interview;

- Shircliff had no concern that I.V. had been coached;

- I.V. provided sensory and peripheral details, which "are oftentimes more difficult to make up"; and

- I.V. told Shircliff that Appellant penetrated her sexual organ with his penis; that he put his penis in her mouth; that he digitally penetrated her sexual organ; and that at one point, he had to clean her back because "something spilled" on it.

Despite Shircliff's testimony that in the interview, I.V. could not describe Appellant's penis, any noises, or anything he said during the incident, Shircliff's testimony about what I.V. told her about Appellant's acts corroborates I.V.'s evidence of the elements of all three counts. *Fifth*, on the recording of the forensic interview, I.V. can be heard and seen telling Shircliff that Appellant forced her to remove her clothes, that he touched inside of her "middle part" with his finger and his "thing," that he told her to put his "thing" on her mouth, and that his "thing" went inside her mouth.

The jury resolved any conflicts and inconsistencies in the evidence against Appellant in reaching their verdicts. Because the evidence viewed in the light most favorable to those verdicts is sufficient to support Appellant's convictions, we overrule his sole issue.

## VI.  CONCLUSION

Having overruled Appellant's sole issue, we affirm the trial court's judgments.

/s/ Mark T. Pittman
MARK T. PITTMAN
JUSTICE

PANEL:  SUDDERTH, C.J.; WALKER and PITTMAN, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  July 12, 2018