

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TREMAIN LOGAN VELASQUEZ, | § | |
| | | No. 08-16-00172-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | County Court at Law Number One |
| | § | |
| THE STATE OF TEXAS, | | Of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 20160C00725) |
| | § | |

## **O P I N I O N**

The trial court convicted Appellant Tremain Logan Velasquez of the misdemeanor offense of Violation of a Protective Order upon his plea of not guilty to the bench. The trial court sentenced him to 90-days' confinement in the El Paso jail with credit for time served. Appellant brings a single issue on appeal, challenging the sufficiency of the evidence to support his conviction. Because the evidence is sufficient to support the trial court's judgment, we affirm Appellant's conviction.

## **Brief Facts**

On January 10, 2016, a magistrate judge entered a protective order prohibiting Appellant from "going within 200 yards: of residence located at 10541 GRAND CIMA EL PASO TEXAS 79936 . . . [within 200 yards] of the Protected Parties, OCHOA, LAUREL KATHLEEN." On January 22, 2016, police were dispatched to a home on Russ Randall, where they met with Timothy

Ochoa, the son of Laurel Kathleen Ochoa, the protected party named in the January 10 protective order. Officers Alegre and Torres listened on speakerphone to a threatening, profane telephone call from Appellant, in which he yelled orders to Ochoa to come to his mother's house so Appellant could kick his ass. Officer Alegre testified he was already aware of the location of Ochoa's mother's house at 10541 Grand Cima.

The officers knew Appellant had an active warrant for forgery, as well as the live protective order. They left the home on Russ Randall for the Grand Cima address and parked a block away from the house to avoid alerting anyone of their presence. They went on-foot to the protected 10541 Grand Cima address, and when they arrived they saw Appellant standing in the backyard outside the house, near a four-foot-high rock wall. The officers approached outside the wall and spoke to Appellant. When Officer Alegre informed Appellant of the warrant and the protective order, Appellant responded that he was not in violation of the protective order because the protected person, Laurel Ochoa, was not there. Officer Alegre told Appellant the address itself was part of the protective order, and Appellant said it was okay because Appellant lived there. Officer Alegre testified he was afraid Appellant would run into the house, so he reached over the wall and grabbed Appellant's arm. Officer Torres jumped into the backyard, and Torres and Alegre, with the help of other officers who were present, managed to lift Appellant over the wall and place him under arrest. The State offered, and the trial court admitted into evidence, State's Exhibit 3, the Protective Order that is the basis of the prosecution.

### Sufficiency of the Evidence

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[1] This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[2]

The trial judge as trier of fact in a bench trial is the sole judge of the weight and credibility of the evidence.[3] Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.[4] Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict.[5] We must presume that the fact finder resolved any conflicting inferences in favor of the verdict and defer to that resolution.[6]

Appellant brings a single issue for appellate review, challenging only whether the evidence proved Laurel Ochoa, the protected party, lived at the house on Grand Cima Road in El Paso where Appellant was arrested or had ever lived there. There is no challenge to the existence of the protective order, the sufficiency of the protective order, Appellant's notice of the existence or contents of the protective order, or his presence at the house on Grand Cima Road in El Paso,

---

[1] *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex.Crim.App. 2016).

[2] *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Jenkins*, 493 S.W.3d at 599.

[3] *See* TEX.CODE CRIM.PROC.ANN. art. 38.04 (West 1979); *Blea v. State*, 483 S.W.3d 29, 33 (Tex.Crim.App. 2016).

[4] *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex.Crim.App. 2012).

[5] *Murray v. State*, 457 S.W.3d 446, 448 (Tex.Crim.App.), *cert. denied*, 136 S.Ct. 198, 193 L.Ed.2d 127 (2015).

[6] *Id.* at 448–49; *see Blea*, 483 S.W.3d at 33.

Texas.

The protective order specifically enumerated the house at 10541 Grand Cima and the location of the person of Laurel Ochoa as places Appellant was required to avoid. He was not ordered specifically to avoid the home of Laurel Ochoa. The misdemeanor information, however, alleged that Appellant violated the January 10, 2016 order only by going within 200 yards of the "residence of Laurel Ochoa a protected individual or a member of the family and household . . . ." Appellant does not challenge the sufficiency of the charging instrument, nor does he challenge sufficiency of the notice it provided, nor does he claim surprise or that Appellant was never ordered to stay away from Laurel Ochoa's residence when she was not present at the residence. Rather, he argues only that the allegations of the misdemeanor information increase the State's burden to prove, not only Appellant's presence at the Grand Cima address, but to prove beyond a reasonable doubt that the Grand Cima address was Laurel Ochoa's home.

Appellant argues the State was required to prove Laurel Ochoa resided at 10541 Grand Cima in El Paso County and that even the trial court "agreed that Ochoa did not reside there," citing to the first volume of the reporter's record at page 74. Appellant misconstrues the record. Appellant had offered the testimony of Laurel Ochoa:

Q. Okay. And were you present at that address on January the 22nd of 2016?

A. I don't know.

Q. When Tremain was arrested for violation of a protective order?

A. Yes, I was there that night, yes.

Q. Now, listen to my question. Were you present on January 22nd, 2016, at the Grand Cima address when Tremain was arrested for a violation of a protective order?

A. Oh, no, sir. No, I was not.

4

Ochoa also testified her father had been paying her bills for a while, including rent for places she lived with Appellant as his "common-law" wife "if that's what you would call it, I guess, when you live together." She testified she had known Appellant since July 2012, and that they began living together at the end of July 2012. Her son lived with Appellant and knew him before Laurel Ochoa met Appellant. She testified her father became more and more ill and she had to live with him at the Russ Randal address. But she testified her son loved taking care of her father and would go over to Russ Randal, where the police talked to him, while she would go to Grand Cima to see Appellant and stay for a couple of days. She would stay overnight. But, she testified, it was never her intent to move into that house. Indeed, she testified that her son took care of her dad for quite a few years.

On the night of Appellant's arrest at Grand Cima for the assault that was the basis for the protective order, Laurel claimed she was intoxicated and remembered little of her conversations with the police. She was very angry and very intoxicated, so she did not remember exactly what she said. She could have said anything because that's what angry, intoxicated people do. Laurel testified that she called a telephone number to talk to a lady with the district attorney's office who had left a card with her.

The frustrated trial judge, after hearing about attempts by Appellant, directly and through Laurel, to get the order changed or lifted altogether, stated,

> And trust me, Mr. Velasquez, I'm well aware of sitting here day in and day out, orders that I issue are constantly, routinely ignored, or for lack of a better word, not ignored. Just people don't pay enough attention to that piece of paper.

> And it's very frustrating for the Court to order something, to set something up, and for whatever reason, people, the accused, or through his lawyer, things kind of get in a fog.

5

Sometimes I question the sincerity of that kind of business, and sometimes I know flat out that it's just fancy footwork taking place.

But the bottom line is, an order is issued by a Judge and you must adhere to it. It is not for you to decide.

This ain't right. It is not her residence. And by the way, you're not on the lease anyway. Technically, if we want to talk technicalities, your name is not on that lease, it is in the other gentleman's name on that lease.

So that doesn't take away from the fact that you can still reside there with his permission or what have you. But technically, that ain't even your residence because your name is not on that lease.

Clearly, contrary to Appellant's reading of the record, the trial court expressed no understanding that Appellant's position was either correct or defensible. He specifically decried Appellant's ignoring the court's order and then suggesting he was not obligated to comply with the court's order. Clearly, the trial court explained that it was the court, not Appellant and not Complainant, who determined the enforceability of an order.

### Holding

Considering the entire record as a whole, and applying the appropriate standard of review, we hold the evidence is sufficient to support the trial court's judgment. We overrule Appellant's sole issue on appeal and affirm the trial court's judgment.

July 13, 2018

LEE ANN DAUPHINOT, Senior Justice Ret.

Before McClure, C.J., Palafox, J., and Dauphinot, Senior Justice Ret.
Dauphinot, Senior Justice Ret. (Sitting by Assignment)

(Do Not Publish)