

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00325-CR
No. 02-18-00326-CR

_____

ROBERT EVERETT WINSETT, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court Nos. 1488017D, 1488018D

Before Sudderth, C.J.; Gabriel and Kerr, JJ.
Memorandum Opinion by Justice Gabriel

# MEMORANDUM OPINION

Appellant Robert Everett Winsett appeals from his two convictions for aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. § 22.02(a)(2). He argues that the evidence was insufficient to support the jury's deadly-weapon findings and that he was harmed by the trial court's failure to include a mistake-of-fact instruction in one of the jury charges. Because Winsett's sufficiency arguments go to credibility issues, which is not a proper inquiry in a sufficiency review, and because he was not entitled to a mistake-of-fact instruction, we affirm the trial court's judgments.

## I. BACKGROUND

Amy Miller, her adult daughter Amber, and Amy's boyfriend Winsett lived together in Winsett's home. On February 17, 2017, at around 3:00 a.m., Amber was awakened by Winsett, who was being loud because he was "very drunk" and angry. Amber asked Amy to do something to calm Winsett down. According to Amber, Winsett overheard her and angrily responded, "'What the [expletive] did she just say,' something about me telling him what to do in his house and we 'can get the [expletive] out.'" Winsett then punched Amber in the face multiple times with his fist. Amy stepped in front of Amber, and Winsett pushed her and hit her in the face as well.[1] Winsett then briefly left the room and reappeared, holding a knife. Winsett

---

[1]Amy stated that the hardness of Winsett's punch was a ten on a ten-point scale.

said, "You're going to die. We're all going to die tonight."[2] Amber and Amy began screaming, and Amy again stepped between Winsett and Amber. Winsett continued to threaten them with the knife for several minutes. Winsett got distracted at some point, and Amber fled the house and called the police.

Drake spoke with Amber about the assault that same day. Amber recounted what happened and described the knife Winsett brandished as being a "10- to 12-inch blade knife with an 8- or 7-inch handle, with a black handle on it." Amy gave Wilson her statement and described the knife Winsett brandished as a "large knife."[3] Officers obtained a search warrant for Winsett's home to find a butcher knife that was approximately 12 inches long with a black and metal handle. Officers found a knife in the kitchen that was approximately 13 inches long from the bottom of the handle to the tip of the blade. The blade was approximately eight inches long, and the handle was dark brown with three silver rivets. Officer Joseph Pawlewicz, a certified forensic death investigator who found the knife in Winsett's kitchen, opined that it was capable of causing death or serious bodily injury and would be considered a deadly weapon. No forensic analysis of the knife was conducted.

---

[2]Amber told Officer David Drake that Winsett, "while holding a large knife," also said, "I'll cut you from your [slang for female sexual organ] to your mouth!" Amy reported this same statement to Detective Kendra Wilson on the day of the assaults.

[3]A few days later, Amy gave Wilson a written statement in which she described the knife "as a butcher knife that [Winsett] retrieved out of the drawer in the kitchen."

Winsett was indicted with the aggravated assaults of Amy and Amber with a deadly weapon—the knife. The indictments included repeat-offender notices, alleging that Winsett had been convicted of murder in 1993. Winsett pleaded not guilty to the indicted charges, and true to the repeat-offender notices. At trial, Amber testified that the knife found at and seized from Winsett's home was the same knife he brandished at her and Amy. Amy described the knife Winsett used as a "butcher knife" and also identified the knife seized from Winsett's house as the knife Winsett brandished during the assaults. A jury found Winsett guilty of both assaults, found that he had used a deadly weapon during their commission, found that the repeated-offender notices were true, and assessed his punishment at 22 years' confinement for each offense. The trial court entered judgments in accordance with the jury's verdicts and ordered the sentences to run concurrently.

## II. SUFFICIENCY TO SUPPORT DEADLY-WEAPON FINDINGS

Winsett contends in his first point that the evidence was insufficient to support the jury's deadly-weapon findings because the knife found in Winsett's house was five inches shorter than the knife Amber described to Drake, because Amber's and Amy's "stories of the event differed," and because no forensic evidence showed that the knife actually was the knife used in the assaults.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). The trier of fact is the sole judge of the weight and credibility of the evidence; thus, we may not re-evaluate those determinations and substitute our judgment for that of the fact-finder. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016). We must presume that the fact-finder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015); *see Blea*, 483 S.W.3d at 33. In other words, a fact-finder is entitled to "believe all, some, or none of the testimony presented by the parties." *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

Here, the jury heard that both Amber and Amy told police on the day of the assaults that Winsett brandished a knife while threatening them with death. The knife recovered by police from Winsett's kitchen was admitted into evidence and shown to the jury. Amber's specific description of the knife differed in certain minor respects from the knife found in Winsett's kitchen; but both Amber and Amy testified that the knife seized from Winsett's kitchen was the knife he had used to threaten them. We defer to the jury's resolution of weight and credibility determinations inherent in its deadly-weapon findings and conclude that the evidence was sufficient to support them. *See, e.g.*, *Johnson v. State*, 509 S.W.3d 320, 324 (Tex. Crim. App. 2017) ("[A]lthough Amelia testified that she could not describe the length, size, or shape of the blade, the jury could have inferred some information about the knife from the

5

video [of the crime] even though the knife was not entered into evidence."); *Black v. State*, No. 2-05-388-CR, 2006 WL 2507325, at *5 (Tex. App.—Fort Worth Aug. 31, 2006, pet. ref'd) (mem. op., not designated for publication) ("Although Officer Dunn's testimony regarding Ashley's description of the knife potentially conflicts with her description at trial, this conflict does not render the evidence insufficient."). We overrule point one.

### III. MISTAKE-OF-FACT INSTRUCTION: ASSAULT ON AMY

In his second point, Winsett argues that in the jury charge regarding Winsett's assault on Amy, the trial court erred by not instructing on mistake of fact after including an instruction on transferred intent. The State requested an instruction on transferred intent, which the trial court included in the charge. *See* Tex. Penal Code Ann. § 6.04(b). Winsett did not object to the inclusion of transferred intent but asserted that because it was included, he was "entitled to a mistake of fact instruction." The trial court denied Winsett's request, and Winsett submitted proposed language, which was nothing more than a photocopy of the mistake-of-fact statute. *See* Tex. Penal Code Ann. § 8.02.

We agree with the State that by failing to specify for the trial court what mistake of fact Winsett was relying on to justify the instruction, he failed to preserve this alleged error for our review.[4] *See Goodrich v. State*, 156 S.W.3d 141, 147–48 (Tex.

---

[4]We recognize that even unpreserved jury-charge errors are subject to appellate review for egregious harm. *See Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App.

App.—Dallas 2005, pets. ref'd) (citing *Williams v. State*, 930 S.W.2d 898, 903 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd)). *See generally* Tex. Code Crim. Proc. Ann. art. 36.14 (requiring objection to omissions from charge to be distinct and specific as to each ground of objection); Tex. R. App. P. 33.1(a)(1)(A) (requiring specificity of objection to preserve error for appellate review). In any event, the inclusion of a transferred-intent instruction does not automatically require the inclusion of mistake of fact. A defendant "must always establish that, 'through mistake,' he 'formed a reasonable belief about a matter of fact' such that 'his mistaken belief negated the kind of culpability required for commission of the offense.'" *Rodriguez v. State*, 538 S.W.3d 623, 630 (Tex. Crim. App. 2018) (quoting Tex. Penal Code Ann. § 8.02(a)). Because there is no evidence that Winsett did not intend to assault Amy, negating the alleged culpable mental state, he did not make the requisite showing to be entitled to a mistake-of-fact instruction. *See, e.g.*, *Maupin v. State*, 930 S.W.2d 267, 268–69 (Tex. App.—Fort Worth 1996, pet. ref'd). We overrule point two.

## IV. CONCLUSION

Because Winsett's sufficiency argument rests on evidence that was subject to weight and credibility determinations made by the jury, which we may not second-

---

2013). However, the charge itself, the state of the evidence and the record, and statements made to the jury reveal that Winsett was not egregiously harmed by the exclusion of mistake of fact, which was not raised by the evidence. *See Murray v. State*, No. 10-15-00123-CR, 2016 WL 4573087, at *5–6 (Tex. App.—Waco Aug. 31, 2016, pet. ref'd) (mem. op., not designated for publication).

guess, we conclude that the evidence was sufficient to support the jury's deadly-weapon findings. We also conclude that because Winsett's objection to the absence of a mistake-of-fact instruction was too general and because of the lack of any evidence to support a mistake-of-fact instruction, the trial court did not err by denying Winsett's requested instruction. Accordingly, we affirm the trial court's judgments. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

Lee Gabriel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: May 23, 2019