# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00317-CR

**Norma Cisneros, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 274TH JUDICIAL DISTRICT
### NO. CR-14-0755, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Norma Cisneros of fraudulent transfer of a motor vehicle with a value of less than $20,000.  *See* Tex. Penal Code § 32.34(b).  The trial court assessed her punishment at confinement for two years in the State Jail Division of the Texas Department of Criminal Justice, suspended the imposition of sentence, and placed appellant on community supervision for five years.  The court also ordered her to pay restitution as a condition of community supervision.  In three points of error, appellant challenges the sufficiency of the evidence to support her conviction, the recipient of the award of restitution, and the amount of restitution awarded.  For the following reasons, we modify the judgment of conviction to reflect the specific restitution amount and affirm the judgment as modified.

## Background[1]

The jury heard evidence that, on May 21, 2014, John Justus Pinkston was driving his 1964 Lincoln Continental (the vehicle) from Austin to San Antonio when he began having car trouble. He pulled over in Hays County and called Pete's Wrecker Service. He spoke with appellant, who is the daughter-in-law of the owner of Pete's Wrecker Service. According to Pinkston, appellant agreed that Pete's Wrecker Service would tow Pinkston's vehicle to its yard and that Blackjack Speed Shop (Blackjack), a car repair shop in San Antonio, would then pick the vehicle up from Pete's Wrecker Service and transport the vehicle to its shop. Pete's Wrecker Service towed the vehicle to its yard, and Pinkston paid the towing fee, but Blackjack did not pick the vehicle up from Pete's Wrecker Service.

On June 16, 2014, appellant submitted completed forms to the Texas Department of Motor Vehicles for a storage lien and an application for certificate of title. She signed the storage lien on behalf of Pete's Wrecker Service, the alleged statutory lienholder, as the affiant. On the form, she certified the outstanding charges of $600 for towing and storage fees on the vehicle and the dates that two notices of the outstanding charges were mailed to Pinkston. She further certified that: (i) "[p]ossession of the vehicle [had] continued for 30 days after the date on which the second notice of the amount of charges was given," (ii) the vehicle had been abandoned, (iii) Pete's Wrecker Service had purchased the vehicle by public sale on June 16, 2014, and (iv) she had complied with

---

[1] Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we provide only a general overview of the facts of the case here. We provide additional facts in the opinion as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4. The facts recited are taken from the testimony and other evidence presented at trial.

2

all applicable statutes and regulations affecting the title transfer of a stored vehicle. On the application for certificate of title, she signed as the seller on behalf of Pete's Wrecker Service and as the purchaser. The required notices to Pinkston, however, were mailed to "411 Brazo St" instead of "411 Brazos Street," which was Pinkston's address as the vehicle's registered owner. The notices were returned to appellant, marked "not deliverable as addressed" and "unable to forward." The Texas Department of Motor Vehicles issued title of the vehicle to Pete's Wrecker Service, effective June 17, 2014.

Around July 30, 2014, Pinkston called Blackjack to check on the status of the vehicle's repair and found out that Blackjack had not picked the vehicle up from Pete's Wrecker Service. Pinkston called Pete's Wrecker Service and spoke to appellant who informed him that he "didn't own the vehicle anymore, it was their vehicle." After speaking with appellant, Pinkston went to Pete's Wrecker Service and located the vehicle at Nobleman Services, a mechanic shop next door to Pete's Wrecker Service. Around this time, Pinkston's father also became involved, speaking with appellant about the vehicle and hiring an attorney.

On August 1, 2014, Pete's Wrecker Service sold the vehicle for $16,000 to Nathan Wilson who lived in Florida. At the request of Pete's Wrecker Service, the owner of Nobleman Services posted online advertisements beginning on July 30, 2014, that the vehicle was for sale. Wilson traveled from Florida and, after inspecting the vehicle on August 1, 2014, agreed to purchase it for $16,000. Wilson paid cash for the vehicle, the vehicle's title was transferred from Pete's Wrecker Service to Wilson, and Wilson transported the vehicle to Florida.

The Hays County Sheriff's Office and the Texas Department of Licensing and Regulation (TDLR) opened investigations concerning the circumstances surrounding the transfer of the vehicle's title from Pinkston. In the TDLR's administrative proceeding, Pete's Wrecker Service entered into a settlement agreement in February 2015 in which it admitted to violating notice and timing requirements for abandoned vehicles and agreed to pay an administrative penalty of $1,800. *See* Tex. Occ. Code §§ 2303.151 (setting forth required notices and time periods for sending notices to vehicle's owner when vehicle towed to storage facility), .154(a) (addressing second notice, time frame for considering vehicle abandoned, and requirement for reporting abandonment to law enforcement); 16 Tex. Admin. Code §§ 85.703(b)(1) (Texas Dep't of Licensing & Regulation, Responsibilities of Licensee–Notice to Vehicle Owner or Lienholder), 85.704(a) (Responsibilities of Licensee–Second Notice; Consent to Sale); *see also* Tex. Transp. Code §§ 683.031–.034 (addressing abandoned motor vehicles left in storage facilities). Appellant's father-in-law signed the settlement agreement on behalf of Pete's Wrecker Service.

As a result of the investigation by the Hays County Sheriff's office, appellant was arrested in August 2014 and indicted in October 2014 for fraudulent transfer of a motor vehicle with a value of less than $20,000. The guilt-innocence phase of appellant's trial occurred in January 2017. The State's witnesses at trial were Pinkston, his father, a TDLR employee, and a sergeant with the Hays County Sheriff's office. Pinkston testified about his conversations with appellant concerning the vehicle, including their initial conversation in which they agreed that Pete's Wrecker Service would tow the vehicle to its yard and that Blackjack would then pick the vehicle up, and their subsequent conversation in which appellant told him that the vehicle no longer

belonged to him. He confirmed that he had not received any notices from Pete's Wrecker Service or notice of a public auction and described locating the vehicle at Nobleman Services after appellant had told him that the vehicle no longer belonged to him. He also testified that he had purchased the vehicle for around $35,000 and then put additional work into it, for a total investment of around $130,000.

Pinkston's father confirmed that Pinkston purchased the vehicle for $35,000 and testified to an additional investment of $123,000 for "custom work." He further testified that, when he spoke with appellant, she told him that the vehicle belonged to her because they "had left [the vehicle] there too long" and that "it was already gone," but that he found the online advertisement listing the vehicle for sale that had been posted by Nobleman Services after he spoke with appellant. In an attempt to resolve the dispute, he testified that he offered $5,000 for the vehicle through an attorney "just to clear all possible bills or anything" but never received a response.

The TDLR employee testified generally about statutory and regulatory requirements concerning abandoned vehicles, including required notices and applicable time periods, and the sergeant testified about her investigation concerning the vehicle and the arrest of appellant. The State's exhibits included a recording of the sergeant's conversation with appellant and her husband that led up to appellant's arrest on August 15, 2014. On the recording, appellant admitted that she was the person who spoke with Pinkston about towing his vehicle to Pete's Wrecker Service but claimed that he "promised" to come get it. She also admitted to speaking with him and his parents about the status of the vehicle at other times. She told the officer that the vehicle was left too long,

and she confirmed that it was sold by private sale for $16,000. She also represented to the officer that the mechanic across the street had charged $15,000 to repair the vehicle.

In addition to the recording of the officer's conversation with appellant and her husband, other State exhibits were: (i) the case file from the TDLR proceeding, including the settlement agreement; (ii) the online advertisement posted by Nobleman Services on July 30, 2014, with photographs of the vehicle when it was on its premises; (iii) the letters from Pete's Wrecker Service that were mailed to Pinkston at the "411 Brazo St" address and the corresponding envelopes marked "return to sender," "not deliverable as addressed," and "unable to forward"; (iv) the completed forms for the storage lien and application for certificate of title, both dated June 16, 2014, and signed by appellant; and (v) the vehicle transfer notification, showing the vehicle had been transferred from Pete's Wrecker Service to Wilson on August 1, 2014.

The witnesses for the defense were Glen Smith, who worked at Blackjack and spoke with Pinkston about picking the vehicle up from Pete's Wrecker Service; an employee with the Hays County Clerk's office who authenticated assumed name certificates for Pete's Wrecker Service that showed that its owner was appellant's father-in-law; the owner of Nobleman Services; and Steve Cisneros, who is appellant's husband. In addition to testifying about his conversation with Pinkston about picking the vehicle up from Pete's Wrecker Service, Smith testified that the name of the repair shop was "Blackjack Speed Shop" and that he did not know of a shop named "Glen's Blackjack Service," which was the name used in the indictment.

The owner of Nobleman Services testified about his shop's repairs to the vehicle before it was sold to Wilson; his placement of the online advertisements at the request of Pete's

6

Wrecker Service on July 30, 2014; and the negotiation and sale of the vehicle to Wilson. He testified that his shop received the vehicle on July 7, 2014, completed repair work on it on July 17, 2014, and that Pete's Wrecker Service paid $2,400 for that work. He also testified that the vehicle remained on his shop's property until it was sold to Wilson. Appellant's husband testified that appellant was not compensated by Pete's Wrecker Service, that she signed the paperwork to transfer title from Pinkston to Pete's Wrecker Service because he was tied up on a phone call at the time, and that he was not aware of an agreement to have the vehicle sent to Blackjack. He, however, confirmed appellant's signatures on the paperwork that transferred title from Pinkston to Pete's Wrecker Service and appellant's involvement in the TDLR proceeding, including her handwritten request for leniency.

The jury found appellant guilty of fraudulent transfer of a motor vehicle with a value of less than $20,000, as charged in the indictment. The punishment phase of the trial was to the court in hearings on March 13, 2017, and May 9, 2017, and the State identified the victims for purposes of restitution to be Wilson and Pinkston. Immediately prior to the hearing on May 9, 2017, the trial court considered and granted the State's motion to return the vehicle to Pinkston. *See* Tex. Code Crim. Proc. art. 47.02(a) (authorizing court to order property restored to owner "[o]n the trial of any criminal action for theft or any other offense involving the illegal acquisition of property"). Wilson was represented by counsel and testified during the hearing on the State's motion to return the vehicle to Pinkston. The trial court also took judicial notice of Wilson's testimony during the punishment phase of the trial. Wilson testified that he paid $16,000 for the vehicle and then spent additional amounts on the vehicle. As the conclusion of the punishment phase, the trial judge made

7

restitution a part of his oral pronouncement of sentence, but he did not set the amount of restitution at that time, advising the parties that if they could not agree on the amount that the court would hold a subsequent hearing.

In its judgment of conviction signed on May 9, 2017, the trial court assessed punishment at confinement for two years in the State Jail Division of the Texas Department of Criminal Justice, suspended the imposition of sentence, and placed appellant on community supervision for five years. As to the amount of restitution, the judgment refers to the restitution order. In its conditions of community supervision signed on the same day, the court also ordered appellant to pay restitution with the amount of restitution to be determined following a hearing. Appellant filed a notice of appeal the following day and a motion for new trial on June 2, 2017, which was overruled by operation of law.

Also relevant to this appeal, the trial court held a restitution hearing in September 2017. The State's witness was Wilson who again testified that he paid $16,000 in cash for the vehicle and that he had spent additional amounts to repair the vehicle. He testified that he had spent $50,000 on the vehicle, which included the purchase price of $16,000 plus parts. At the conclusion of this hearing, the trial court ruled that the appropriate restitution was $50,000 payable to Wilson and that payment would be a condition of community supervision.[2] On May 22, 2018, however, the trial court signed an agreed order to modify the restitution order, reforming the amount of restitution payable to Wilson to $16,000.

---

[2] The record does not contain a written order reflecting the trial court's ruling from the September 2017 hearing on restitution.

**Analysis**

**Sufficiency of the Evidence**

In her first point of error, appellant challenges the sufficiency of the evidence to support her conviction for fraudulent transfer of a motor vehicle. She challenges the sufficiency of the evidence to support several of the elements of the offense, as charged in the indictment.

*Standard of Review*

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313–14 (1979); *Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014). When reviewing the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). In our sufficiency review we must consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *Thompson v. State*, 408 S.W.3d 614, 627 (Tex. App.—Austin 2013, no pet.); *see Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318–19. We consider only whether the factfinder reached a rational decision. *See Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (observing that reviewing court's "role on appeal 'is restricted to guarding

9

against the rare occurrence when a fact finder does not act rationally'" (quoting *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010))).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. art. 38.04; *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we must defer to the credibility and weight determinations of the factfinder. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016); *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). In addition, we must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Clayton*, 235 S.W.3d at 778).

*Fraudulent Transfer of a Motor Vehicle*

Relevant to this appeal, section 32.34(b)(2) of the Penal Code sets out the elements for the offense of fraudulent transfer of a motor vehicle:

(b)     A person commits an offense if the person acquires, accepts possession of, or exercises control over the motor vehicle of another under a written or oral agreement to arrange for the transfer of the vehicle to a third party and:

. . .

(2)     intending to defraud or harm the vehicle's owner, the person transfers the vehicle to a third party.

Tex. Penal Code § 32.34(b)(2). In conformity with the elements as stated in section 32.34(b)(2) of the Penal Code, the indictment charged appellant with the offense as follows:

> On or about the 15th day of July, A.D. 2014, in Hays County, Texas, the Defendant, Norma Cisneros, did then and there, after having acquired, accepted possession of, or exercised control over a motor vehicle of the value of less than $20,000, owned by John Pinkston, under an oral agreement between the defendant and the said John Pinkston to arrange for the transfer of the vehicle to Glen's Blackjack Service, and intending to defraud and harm the said John Pinkston, intentionally or knowingly dispose[d] of the vehicle by applying for title to the vehicle before the proper time line and selling the vehicle to a third party unknown to the grand jury,
>
> AGAINST THE PEACE AND DIGNITY OF THE STATE

As charged in the indictment, appellant challenges the sufficiency of the evidence to support "an oral agreement," her "intent to defraud and harm" Pinkston, and the reference to "Glen's Blackjack Service." We address each of these challenges in turn.

### 1. Evidence of an oral agreement

Appellant argues that there was no proof of "an oral agreement between the defendant and the said John Pinkston to arrange for the transfer of the vehicle to Glen's Blackjack Services." Appellant focuses on the evidence that Pinkston was the person who spoke with Smith at Blackjack to arrange for the vehicle to be picked up from Pete's Wrecker Service and transported to Blackjack and the lack of evidence of an agreement in which she was responsible for arranging to have the vehicle transferred to Blackjack from Pete's Wrecker Service. It is her position that the evidence showed that the agreement to transfer the vehicle from Pete's Wrecker Service was only between

11

Pinkston and Blackjack and that her agreement was limited to towing the vehicle to Pete's Wrecker Service and then storing it until appellant arranged to have it picked up.

As charged in the indictment, however, the State was not required to prove that appellant was responsible for all of the logistics of transferring the vehicle to Blackjack—only that she and Pinkston had an agreement to transfer the vehicle to Blackjack in which she agreed to play a role. At the time of appellant's initial conversation with Pinkston—when their agreement was reached—the vehicle was on the side of the road. Appellant does not dispute that she agreed to arrange to have the vehicle towed to Pete's Wrecker Service and other evidence supported that she also agreed to hold the vehicle until Blackjack picked it up.[3] The jury was free to believe Pinkston's testimony about his agreement with appellant that Pete's Wrecker Service would tow the vehicle to its yard and then "[a] flatbed would be brought to [appellant]'s shop to pick up the vehicle from Blackjack." *See Cary*, 507 S.W.3d at 757; *Blea*, 483 S.W.3d at 33. Nothing more was required to satisfy the State's burden to prove an oral agreement between appellant and Pinkston, as charged in the indictment.

2.      Evidence of intent to defraud and harm

Appellant argues that the State failed to prove that she intended to defraud and harm Pinkston, primarily arguing that the evidence that showed her mistakes in the legal requirements for providing notices to Pinkston and law enforcement was not proof of intent to defraud.

---

[3] In her briefing, appellant concedes that the evidence showed her agreement to hold the vehicle, stating: "All of the evidence shows that John Justus Pinkston and appellant merely agreed that the towing company would tow the car to the towing yard and hold it until Pinkston arranged to have it picked up by the mechanic shop in San Antonio."

12

The Penal Code defines "harm" generally to mean "anything reasonably regarded as loss, disadvantage, or injury." Tex. Penal Code § 1.07(a)(25) (defining "harm"). The Penal Code does not define "defraud," but this Court has applied its plain meaning to explain that "[a] person defrauds another if she takes or withholds from another 'some possession . . . by calculated misstatement or perversion of truth, trickery, or other deception.'" *In re E.P.*, 185 S.W.3d 908, 910 (Tex. App.—Austin 2006, no pet.); *see* Tex. Penal Code § 31.01(1) (defining "deception"); *Garcia v. State*, 630 S.W.2d 303, 305 (Tex. App.—Houston [1st Dist.] 1981, no pet.) (explaining that "use of deception by an accused is evidence of intent to defraud and harm" and that "deception may take the form of giving false information . . . or of engaging in behavior designed to avoid detection"). Concerning a defendant's intent, it may be "inferred from circumstantial evidence such as acts, words, and the conduct of the [defendant]." *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (citing *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995)).

As an initial matter, appellant argues that "the State had to prove that appellant had the intent to defraud the alleged victim at the time the towing company took possession of the [vehicle]." It is appellant's position that, under section 32.34 of the Penal Code, a defendant's intent to defraud must coincide with acquiring, accepting possession of, or exercising control over the vehicle. The plain language of the statute, however, does not support this position. *See State v. Velasquez*, 539 S.W.3d 289, 292 (Tex. Crim. App. 2018) (explaining that courts ordinarily interpret statutes based on their plain meaning). Relevant to this appeal, the element of intent to defraud or harm is tied to the subsequent transfer of the vehicle to a third party. *See* Tex. Penal Code § 32.34(b)(2) (stating that person commits offense if "person acquires, accepts possession of, or

13

exercises control over the motor vehicle of another under a written or oral agreement to arrange for the transfer of the vehicle to a third party and: . . . (2) intending to defraud or harm the vehicle's owner, the person transfers the vehicle to a third party"). Thus, we decline to limit our review of the evidence to appellant's actions on May 21, 2014, when Pete's Wrecker Service took possession of the vehicle.

Turning to appellant's primary argument concerning the evidence of her intent, she argues that the evidence showing that she failed to comply with the legal requirements for abandoned vehicles did not show "an intent to defraud, but rather show[ed] a misunderstanding of the technicalities of the law regarding abandoned vehicles" and that there was "no evidence of any kind of deceit or deception on the part of appellant." Although appellant presented some evidence to support a finding that she misunderstood the legal requirements for abandoned vehicles, the jury heard appellant's recorded admission to the sergeant that she had been handling title transfers for twenty years in this type of situation.

Other evidence also showed that appellant was aware of the applicable legal requirements but that she consciously chose not to follow them. For example, the form for the storage lien that she signed as the affiant and submitted on June 16, 2014, lists the statutory time periods for sending the required notices and proceeding to foreclose on a storage lien, expressly stating the required steps for foreclosure, but she did not follow the stated time periods or required steps. She did not mail the required notices to Pinkston within the required time periods—even if they had been properly addressed—or notify law enforcement, and she proceeded to foreclose on the storage lien before the time period for doing so. Other violations of the applicable laws as stated on

14

the storage lien form included selling the vehicle by private sale, and not public auction; not paying the balance of the proceeds from the vehicle's sale to Pinkston; and applying for the certificate of title before the time period for doing so. The evidence also showed that appellant participated in the TDLR administrative proceeding and that Pete's Wrecker Service admitted to multiple violations concerning the vehicle.

There also was evidence of appellant's use of deception. *See In re E.P.*, 185 S.W.3d at 910; *Garcia*, 630 S.W.2d at 305. Pinkston and his father testified that appellant falsely represented to them prior to August 1, 2014, that the vehicle already had been sold and that "it was already gone." Appellant also represented to the sergeant on the recorded conversation that Nobleman Services charged $15,000 to repair the vehicle, but the owner of Nobleman Services testified that the actual charge for the repair was around $2,400, and appellant did not return any of the proceeds to Pinkston from the vehicle's sale. Appellant continued to represent that Pinkston owed the towing fee—even though he had already paid it—and storage fees after the vehicle's title was transferred to Pete's Wrecker Service. The jury reasonably could have inferred from this evidence of appellant's acts, words, and conduct that she intended to defraud and harm Pinkston. *See* Tex. Penal Code §§ 1.07(a)(25) (defining "harm"), 31.01(1) (defining "deception"); *Guevara*, 152 S.W.3d at 50; *see also In re E.P.*, 185 S.W.3d at 910; *Garcia*, 630 S.W.2d at 305.

15

3.     Reference to "Glen's Blackjack Service"

Finally, as support for her position that the evidence was insufficient to support her conviction, appellant focuses on the evidence that the repair shop referenced in the indictment was actually named "Blackjack Speed Shop," not "Glen's Blackjack Service" as alleged in the indictment.

"Little mistakes or variances that do not prejudice a defendant's substantial rights are immaterial" and are not considered in reviewing the sufficiency of the evidence. *See Byrd v. State*, 336 S.W.3d 242, 247–49 (Tex. Crim. App. 2011); *see id.* (contrasting immaterial and material variances and failures of proof and providing examples of immaterial variances); *Gollihar v. State*, 46 S.W.3d 243, 258 (Tex. Crim. App. 2001) (holding that hypothetically correct jury charge—standard for measuring sufficiency of evidence—need not incorporate allegations that give rise to immaterial variances). A variance is material if it deprived the defendant of sufficient notice of the charges against him such that he could not prepare an adequate defense or would subject him to the risk of being prosecuted twice for the same offense. *Byrd*, 336 S.W.3d at 247–48; *see Fuller v. State*, 73 S.W.3d 250, 253–54 (Tex. Crim. App. 2002) (explaining when variance is material and concluding that variance in victim's name was immaterial because there was "no indication in the record that appellant did not know whom he was accused of injuring or that he was surprised by the proof at trial" and variance "[did] not subject appellant to another prosecution for the same offense"); *see also Johnson v. State*, 364 S.W.3d 292, 298–99 (Tex. Crim. App. 2012) (summarizing three categories of variances).

16

Here the complained-of variance—the name of the repair shop in San Antonio—did not deprive appellant of sufficient notice of the charges against her such that she could not prepare an adequate defense. There is nothing in the record to support a finding of surprise as to the identity of the repair shop involved in the incident or that appellant did not know which repair shop was referenced in the indictment—appellant called an employee from the repair shop as one of her witnesses. Further, there is no risk that the variance in the name of the repair shop would subject appellant to being prosecuted twice for the same offense. Thus, we conclude that any difference regarding the name of the repair shop in San Antonio was an immaterial variance and that it does not impact our review of the sufficiency of the evidence. *See Johnson*, 364 S.W.3d at 298–99; *Byrd*, 336 S.W.3d at 247–48; *Fuller*, 73 S.W.3d at 253–54.

*Conclusion as to the Sufficiency of the Evidence*

Viewing the evidence in the light most favorable to the verdict and assuming that the jury drew reasonable inferences in a manner that supports the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that appellant and Pinkston had "an oral agreement" "to arrange for the transfer of the vehicle" to Blackjack and that appellant intended to defraud and harm Pinkston by applying for title to the vehicle and then selling it to a third party. *See* Tex. Penal Code § 32.34(b)(2); *Jackson*, 443 U.S. at 319. Thus, we conclude that the evidence was legally sufficient to support the jury's finding that appellant was guilty of fraudulent transfer of a motor vehicle with a value of less than $20,000, as charged in the indictment. We overrule appellant's first point of error.

17

**Restitution to Wilson**

In her second point of error, appellant argues that the trial court erred in ordering appellant to pay restitution to Nathan Wilson because "he was not a victim of the offense for which appellant was convicted."[4] We review challenges to restitution orders under an abuse of discretion standard. *See Drilling v. State*, 134 S.W.3d 468, 469 (Tex. App.—Waco 2004, no pet.).

"In addition to any fine authorized by law, the court that sentences a defendant convicted of an offense may order the defendant to make restitution to any victim of the offense." Tex. Code Crim. Proc. art. 42.037(a). "[F]or purposes of the restitution statute, a 'victim' is any person who suffered loss as a direct result of the criminal offense." *Hanna v. State*, 426 S.W.3d 87, 94 (Tex. Crim. App. 2014). "The phrase 'as a result of the offense' includes the notion of both actual and proximate causation." *Id.* at 95. "[T]he damages must be a 'direct' result of the defendant's criminal offense—that is, the State must prove, by a preponderance of the evidence, that the loss was a 'but for' result of the criminal offense and resulted 'proximately,' or foreseeably, from the criminal offense." *Id.* Restitution "may be ordered for someone whose name did not appear in the charging instrument," but "the State must prove that the defendant's commission of the offense was the direct cause of the harm." *Id.* at 89–90.

According to appellant, she was not convicted of any crime related to the sale of the vehicle to Wilson. But one of the elements of the charged offense that the State was required to

_____

[4] The agreed order to modify restitution order was signed by the trial court a few months after appellant had filed her brief in this appeal. The order expressly states that the "State and defendant agree that this modification does not waive the Defendant's 2nd point of error challenging whether it was proper to have the Court order the Defendant to pay restitution to Nathan Wilson" in this appeal.

18

prove was that appellant, intending to defraud or harm the vehicle's owner, transferred the vehicle to a third party. The evidence was undisputed that, after the vehicle's title was transferred to Pete's Wrecker Service, it was transferred to Wilson. Prior to the conclusion of the sentencing phase of the trial, Wilson was ordered to return the vehicle to Pinkston without compensation, and he testified that he paid $16,000 in cash when he purchased the vehicle. His loss of the purchase price was a "but for" and foreseeable result of appellant's fraudulent transfer of the vehicle.

On this record, we conclude that Wilson suffered loss as a direct result of appellant's fraudulent transfer of the vehicle and, therefore, that the trial court did not abuse its discretion in ordering restitution payable to Wilson. *See id*.; *Drilling*, 134 S.W.3d at 469. We overrule appellant's second point of error.

**Amount of Restitution**

In her third point of error, appellant argues that the trial court erred in ordering her to pay restitution in the amount of $50,000. She argues that "if the Court of Appeals rules that Nathan Wilson is entitled to any restitution from appellant (See Point of Error Two), that the amount of restitution should be limited to $16,000, the amount that he paid for the car when he purchased it from Pete's Towing Service." Although the trial court held a hearing on restitution in September 2017 and ordered appellant to pay $50,000 to Wilson as a condition of community supervision, the trial court subsequently signed an agreed order on May 22, 2018, reforming the amount of restitution to the amount of $16,000 payable to Wilson.

Because the parties have agreed to the specific restitution amount, appellant's third point of error is moot. The trial court, however, signed the May 22, 2018, order after the appellate

record had been filed in this Court during the pendency of this appeal and, thus, was without authority to do so. *See* Tex. R. App. P. 25.2(g) (generally suspending further proceedings in trial court during pendency of appeal "[o]nce the record has been filed in the appellate court"); *Simon v. State*, 442 S.W.3d 581, 584–85 (Tex. App.—San Antonio 2014, no pet.) (holding that trial court lacked jurisdiction to modify terms of community service during pendency of appeal); *see, e.g.*, *Lundgren v. State*, 434 S.W.3d 594, 598 (Tex. Crim. App. 2014) (explaining that commencement of community-service terms are stayed during pendency of appeal); *Gonzales v. State*, 353 S.W.3d 826, 830 n.4 (Tex. Crim. App. 2011) (explaining that generally "an order is void when the court that entered it . . . lacked jurisdiction to enter the order").

When the amount of restitution is not determined prior to an appeal, an appellate court may remand the case for an evidentiary hearing to "reach an accurate restitution amount." *See Burt v. State*, 445 S.W.3d 752, 760–61 (Tex. Crim. App. 2014) (explaining procedure on appeal when trial court makes restitution part of oral pronouncement of sentence but does not set amount). Remand to the trial court to hold a restitution hearing, however, is unnecessary here because the parties subsequently have agreed to the amount of restitution. *See id.* (explaining that "need to remand could have been avoided" had parties themselves agreed to specific restitution amount). The agreed order to modify was signed by both sides' counsel as to substance and form, and it expressly states: "Now comes The State of Texas by and through the District Attorney, and respectfully would agree with the Defendant to modify the Restitution Order entered by the Court on September 26, 2017 in the following respect: The amount of restitution is to be reformed to the amount of $16,000.00 payable to Nathan Wilson."

This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Given the parties' agreement as to the specific restitution amount, we modify the judgment to reflect that the amount of restitution is $16,000.

## Conclusion

For these reasons, we modify the judgment of conviction as stated above and affirm the judgment as modified.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Bourland

Modified and, as Modified, Affirmed

Filed: November 28, 2018

Do Not Publish