

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00399-CR

Jamie Lynn **MCCORD**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2017CR5049
Honorable Lorina I. Rummel, Judge Presiding

Opinion by: Irene Rios, Justice

Sitting: Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Irene Rios, Justice

Delivered and Filed: June 5, 2019

AFFIRMED

A jury found appellant Jamie Lynn McCord guilty of the murder of Ryan Perez. In a single issue, McCord contends the evidence is insufficient to prove she possessed the required mental state to support her murder conviction. We affirm.

**BACKGROUND**

At about 6:30 p.m. on February 20, 2017, San Antonio Police Department ("SAPD") Officer Ryan Fuentes was dispatched to Mission Trail Baptist Hospital[1] for a reported gunshot victim. Officer Fuentes learned from hospital personnel that the victim, Ryan Perez, was in critical condition and was going to be transported to San Antonio Military Medical Center ("SAMMC"), which occurred at approximately 7:23 p.m.

Nurse Cheryl Ann Cervantes, who provided care to Perez, described Perez as awake and alert when he was brought to the emergency room. Perez walked into the emergency room but then collapsed in the waiting area. Cervantes related that Perez was in respiratory distress and was not cooperative with nurses. According to Cervantes, Perez stated he was shot in the chest with a .22 caliber gun by a friend who was cleaning the gun. According to the doctor's notes, Perez reported being assaulted prior to arriving at the emergency room. The doctor's notes also indicate Perez was brought to the emergency room by his girlfriend.

Officer Fuentes spoke with witness Jamie McCord, who Officer Fuentes described as nervous and upset. McCord informed Officer Fuentes the accidental shooting occurred in her apartment, and she gave Officer Fuentes consent to search the apartment.

SAPD Officer Matthew Cuellar, who was acting as a cover officer, observed a crime scene investigator conduct a gunshot residue test ("GSR") on McCord. The results for the GSR test conducted on McCord later returned an indeterminate result, as did the GSR test conducted on Perez. McCord explained that she shot a gun and gave varying accounts of how or where that occurred. Officer Cuellar related that McCord told him "that they're both inside the house and they're, to some effect, painting or cleaning a gun and it went off and [Perez] got struck in the

---

[1] During Officer Fuentes's testimony, the State refers to the hospital as "Mission Trails Hospital." However, the proper name of the facility is Mission Trails Baptist Hospital.

chest." McCord also stated that she shot the gun "outside of her window." According to Officer Cuellar, McCord stated she "was inside of her apartment complex and then shot it outside of her window." McCord also stated that she shot the gun by the dumpster. McCord informed Officer Cuellar that she did not retrieve any shell casings.

SAPD Officer Clint Bush was dispatched to McCord's apartment "as a cover officer to respond to the location of a possible shooting … to secure the scene." During a protective sweep of the apartment, Officer Bush viewed a weapon on a dresser in what was identified as McCord's bedroom, along with drug paraphernalia and a crystal substance the officer believed to be methamphetamine. Officer Bush then obtained consent to search the apartment from the occupant, McCord's mother, Sherry. A semi-automatic .22 caliber handgun was retrieved from the scene.

Officers searched for shell casings both inside and outside the apartment. According to Officer Fuentes, one shell casing was found inside the weapon, but no shell casings were found elsewhere. Officer Fuentes noted that the window through which McCord said she fired the weapon was dusty and did not appear to have been touched in months. Officer Fuentes also noted he did not locate gun cleaning supplies or find any indication in the bedroom or elsewhere in the apartment that there had been an attempt made to clean the gun.

The supervisor of the Firearms Section and forensic firearm scientist, Ed Wallace, later testified he examined the firearm retrieved from the apartment and observed the gun had been altered. Wallace described the paint was flaking off and the manual safety had been removed from the weapon. Wallace stated the weapon was capable of firing and that the weapon's trigger was not light – it required a "reasonable" amount of pressure to fire, which Wallace described as five and a half to six and a half pounds of pressure. Wallace was not able to determine whether the bullet retrieved during Perez's autopsy was fired by the handgun retrieved from the apartment because "[t]he individual or unique marks weren't there in sufficient quality to allow [him] to

determine that." However, "[t]he markings on the surface of the bullet were consistent with the barrel of his [sic] particular gun."

During the course of the investigation at the apartment, Officer Bush asked Sherry what Perez told her, and Sherry responded that "[h]e didn't say nothing." Sherry later testified during trial that on the day of the shooting, there was a "disturbance" during which "[a] ladder [flew] out the door." According to Sherry, McCord threw the ladder out the door. McCord also threw Perez's boots and duffle bag out of the apartment. Sherry testified she heard McCord and Perez arguing and McCord telling Perez to get out. Sherry also heard Perez calling McCord "names" and heard Perez yell "Do it! Do it!" Sherry then heard what she thought was a gunshot.

According to Sherry, McCord then came out of the bedroom, left the apartment, and retrieved Perez's truck. Sherry testified McCord told her, "We're taking him to the hospital." Sherry confirmed that in her written statement to police made the night of the shooting, she told police McCord told her "Let's get him to the hospital before he dies." Sherry testified that during the drive to the hospital, McCord asked Perez, "You shot yourself, didn't you, [Perez]?" and Perez replied "Yes." Sherry confirmed she did not include that exchange in her written statement. Sherry also confirmed that her written statement included the recitation of another incident in which McCord "said [Perez] was coming at her or something along those lines."

Following the initial investigation of the apartment, officers transported McCord to police headquarters where she was interviewed by SAPD Detective Dennis Cartwright. During the interview, McCord told Detective Cartwright she obtained a handgun for protection and that while she and Perez were "checking it out" the handgun "went off." According to Detective Cartwright, McCord admitted she and Perez had a "small disagreement." Detective Cartwright testified McCord stated she test-fired the handgun. According to Detective Cartwright, McCord did not note any problems with the handgun. Detective Cartwright testified that "based on the totality of

everything that we had with the statements and what she [was] claiming, we had enough probable cause to arrest her for murder."

Medical examiner Dr. James Feig conducted the autopsy of Perez's body. Dr. Feig testified during trial that Perez died as the result of a gunshot wound. The bullet entered Perez through the center of his chest from front to back, perforated the right lung and heart, which resulted "in the loss of a lot of blood and pretty rapidly." Dr. Feig characterized the wound as a distant gunshot wound and testified there was no evidence indicating Perez shot himself accidentally or intentionally because there was no evidence the weapon in this case was fired from a close range.

The State charged McCord by indictment with alternative theories of murder: intentionally or knowingly causing Perez's death by shooting him with a firearm; and, with intent to cause serious bodily injury to Perez, committing an act clearly dangerous to human life that caused Perez's death by shooting at and in Perez's direction with a firearm. *See* TEX. PENAL CODE ANN. § 19.02(b)(1), (2). At trial, the jury charge contained those alternative theories of murder. The jury found McCord "guilty of murder as charged in the indictment." McCord elected for the trial court to assess punishment; the trial court sentenced McCord to thirty-five years' imprisonment.

This appeal followed.

### ANALYSIS

In her sole issue on appeal, McCord contends the evidence is legally insufficient to support her conviction. Specifically, McCord argues the evidence is "insufficient to prove that [she] possessed the requisite intent to commit murder."

### Standard of Review

In reviewing the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Blea v. State*, 483 S.W.3d 29, 33

(Tex. Crim. App. 2016). The applicable standard of review requires us to resolve any evidentiary inconsistencies in favor of the verdict, keeping in mind that the factfinder is the exclusive judge of the facts and the credibility of the witnesses, and shall determine the weight to give witnesses' testimony. *Id*. When there is conflicting evidence, we must presume the factfinder resolved the conflict in favor of the verdict, and defer to that resolution. *Id*. Circumstantial evidence is as probative as direct evidence and, alone, can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). A verdict of guilt will be upheld if the evidence is sufficient on any one of the theories submitted. *See Hooper*, 214 S.W.3d at 14.

### Sufficiency of the Evidence

"A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a). "Bodily injury" means "physical pain, illness or any impairment of physical condition." *Id*. § 1.07(a)(8). "Serious bodily injury" means "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id*. § 1.07(a)(46). A person commits murder if he "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(2).

On appeal, McCord challenges only the sufficiency of the evidence that she intended to kill Perez or that she intended to cause him serious bodily injury. McCord does not challenge the jury's determination that her actions caused Perez's death. "Direct evidence of the requisite intent

is not required … ." *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002). Intent is almost always proven through circumstantial evidence. *Stobaugh v. State*, 421 S.W.3d 787, 862 (Tex. App.—Fort Worth 2014, pet. ref'd); *see Tottenham v. State*, 285 S.W.3d 19, 28 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("[B]oth intent and knowledge may be inferred from circumstantial evidence and proof of a culpable mental state almost invariably depends on circumstantial evidence."). "A jury may infer intent from the acts, words, and conduct of the accused, as well as from the extent of the injuries and the relative size and strength of the parties." *In re I.L.*, 389 S.W.3d 445, 456 (Tex. App.—El Paso 2012, no pet.). Additionally, a jury may infer that a criminal defendant intended the natural consequences of her acts. *See Ruffin v. State*, 270 S.W.3d 586, 591 (Tex. Crim. App. 2008). "[T]he specific intent to kill may be inferred from the use of a deadly weapon." *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012).

McCord shot Perez with a semi-automatic .22 caliber handgun — a deadly weapon. The jury was within its province to presume McCord intended to kill Perez. Further, other evidence supports the jury's determination that McCord intended to kill Perez or cause him serious bodily injury.

Officers Fuentes, Cuellar, and Bush wore body cameras during the investigation. The recordings from their body cameras were admitted into evidence. Additionally, a redacted recording of the interview Detective Cartwright conducted with McCord was admitted into evidence. The jury viewed the recordings of the various statements McCord made to the officers, as well as McCord's interview with Detective Cartwright. The jury also heard Sherry's testimony describing the events leading to the shooting, as well as her testimony regarding McCord's statements following the shooting.

The evidence, and reasonable inferences that can be drawn from the evidence, are sufficient to show McCord intended to kill Perez or cause serious bodily injury to Perez. Viewing the

evidence in the light most favorable to the jury's verdict, we conclude a reasonable juror could have found beyond a reasonable doubt that McCord intended to kill or intended to cause serious bodily injury to Perez.  Issue one is overruled.

### CONCLUSION

For the above reasons, we affirm the trial court's judgment.

Irene Rios, Justice

DO NOT PUBLISH