**AFFIRMED and Opinion Filed April 21, 2020**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-18-00424-CR**
_____

**JOHNELLE RENEE HALL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court No. 10**
**Dallas County, Texas**
**Trial Court Cause No. MA17-13792-L**

**MEMORANDUM OPINION**

Before Justices Bridges, Molberg, and Partida-Kipness
Opinion by Justice Partida-Kipness

A jury convicted Johnelle Renee Hall of Class A misdemeanor assault family violence. *See* TEX. PENAL CODE ANN. § 22.01(a)(1). The trial court made an affirmative finding of family violence and sentenced Johnelle to 180 days confinement in county jail, probated for eight months, and a $180 fine. *See* TEX. CODE CRIM. PROC. ANN. art. 42.013. In three issues, Johnelle contends (1) the evidence was legally insufficient to support the jury's verdict; (2) the trial court erred in failing to conduct a hearing on Johnelle's claim of jury misconduct; and (3) the trial court committed reversible error in failing to instruct the jury on the

presumption of reasonableness as to her self-defense claim. We affirm the trial court's judgment.

## BACKGROUND

Johnelle and Clifton Hall had been married for five years when Clifton filed for divorce in May of 2017. The couple had been sleeping in separate rooms for approximately a year before that. Initially, Clifton started sleeping in the guest bedroom due to his snoring. Clifton had surgery to correct this problem, but the couple continued the practice of separate bedrooms because tensions had developed between them. Despite sleeping in the guest room, Clifton kept his clothes in the master bedroom closet and his toiletries in the master bathroom.

Because he left for work earlier than Johnelle, Clifton awoke before her on most days. As a matter of practice, he would enter the master bedroom suite in which Johnelle was sleeping and collect his toiletry items and underclothes. Because it was still dark, Clifton used the light from the screen of his cell phone to find his way. Clifton would then shower and dress in a guest bathroom downstairs before awakening the couple's two small children. After feeding the children, Clifton would take them to the master bedroom for Johnelle to kiss them goodbye before Clifton took them to daycare on his way to work. While Johnelle was saying goodbye to the children, Clifton would get his outer shirt and shoes from the master bedroom closet, which was located in the master bathroom. Thus, Clifton had to enter the bathroom to access the closet. The record reflects that Johnelle and Clifton

had operated in this manner for the entire time they had been sleeping in different rooms.

On or about May 31, 2017, the trial court in the couple's divorce proceeding held a temporary orders hearing. At that hearing, Johnelle requested an order requiring Clifton to move out of the family home by June 15, 2017, and to pay child support. Clifton opposed the request. The trial court issued temporary orders requiring Clifton to move out by July 1, 2017, and pay child support. Neither Johnelle nor Clifton agreed with this order. The record reflects that both Johnelle and Clifton agreed to continue their existing sleeping arrangement while Clifton remained in the house.

On June 2, 2017, Clifton awoke and went about his normal routine with one deviation. Ordinarily both children slept in another upstairs bedroom. One child had awoken the night before and Johnelle had moved the child into her bed in the master bedroom. Thus, Clifton reentered the master bedroom after his shower to retrieve the child.

After waking and feeding the children, Clifton returned to the master bedroom so Johnelle could kiss the children and he could get his shirt. However, he found the door locked. Clifton unlocked the door with a "pin key" and entered. Clifton claims he heard Johnelle run into the bathroom as he entered the bedroom. He proceeded to the bathroom and found that door locked. He unlocked the bathroom door but was unable to open it. Johnelle was holding the door shut.

An altercation ensued, during which Clifton was injured by Johnelle. Although certain details are disputed, both Johnelle and Clifton generally agree that Clifton forced his way into the bathroom. When he did so, Johnelle fell backwards as she was holding the door closed. As Clifton proceeded to the closet, Johnelle hit and scratched him. Clifton attempted to restrain her and pushed her off of him. Clifton obtained his shirt from the closet and departed the bathroom. During the altercation, Clifton dropped his keys. As he was leaving, Johnelle picked up his keys and threw them in his direction. Clifton went downstairs and called 911.

The facts in dispute concern whether Clifton first restrained Johnelle before she hit him, whether Johnelle hit Clifton in self-defense, and whether Johnelle hit Clifton with the keys as he was leaving the room.

At trial, Clifton testified:

- since he started sleeping in the guest bedroom a year prior, it was his normal routine to return to the master bedroom closet to get his shirt and shoes while Johnelle was visiting with the children;

- before June 2, 2017, Johnelle had never complained about his morning routine;

- when he encountered the locked bathroom door on June 2, 2017, he told Johnelle that he needed to get his shirt from the closet, and Johnelle responded, "[T]hat's too bad. You should have gotten it the first time you were in here."

- he forced his way into the bathroom because Johnelle was holding the door closed;

- he did not physically engage Johnelle after entering the bathroom, but Johnelle started pushing him in the back of the head and neck as he was walking to the closet;

- he turned around and pushed her off of him, and she fell;

- Johnelle got up, "rushed" him, and started trying to hit him;

- he restrained her by grabbing her arm, but she got one arm free and started hitting him in the head, clawing at his eyes, and hit him in the eye;

- once Johnelle stopped hitting him, Clifton released her, got his shirt from the closet, and started walking out of the bathroom; and

- as he was walking out, Johnelle picked up his keys, which he had dropped during the encounter, and threw them at him, hitting him in the back.

On cross examination, Clifton testified that he thought Johnelle was provoking him to "do something stupid" so she could get him out of the house sooner, referring to Johnelle's dissatisfaction with the order giving Clifton until July 1, 2017, to move out.

At trial Johnelle testified:

- when Clifton attempted to open the bathroom door, she held it shut by leaning back on it while attempting to get dressed;
- Clifton told her to move because he needed to get ready, and Johnelle responded that he was "already ready," because he had already been in there, stating, "I let you get ready, now let me get ready";
- Clifton continued to push the door and pushed it in, causing the door to hit Johnelle's left side;
- once Clifton was in the bathroom, he tried to move her out of the way and a struggle ensued, with Clifton holding Johnelle's wrists;
- Johnelle managed to free one hand and started "wailing" on him until Clifton released her, pushing her to the floor, and standing over her in an intimidating way;
- she did not "charge" Clifton after he released her, as he alleged;
- she only underhandedly tossed Clifton's keys into the hallway to ensure that he left the room;
- she "didn't care about him getting his clothes" but was surprised "the way he came in," thus she was "just trying to protect herself"; and
- she was dissatisfied with the temporary orders permitting Clifton to stay in the family home until July 1, 2017, because she wanted him out by June 15, 2017, which she said was "generous."

Officers Jimmy Boatman and Robert Nelson of the Cedar Hill Police Department responded to Clifton's 911 call. Both officers interviewed Clifton and Johnelle, and both officers' body camera video was submitted as evidence and presented to the jury at trial, as was the audio of Clifton's 911 call. The body camera video reflects that Johnelle admitted she hit Clifton first. When asked by Officer Nelson whether Clifton struck her, Johnelle said that he only pushed her into the wall when he forced his way into the bathroom. Johnelle also stated that Clifton did the same thing every morning, referring to the couple's morning routine, and that there had never been any violence between them. When asked why she did not let

Clifton get his shirt and shoes and leave, Johnelle provided no direct answer but restated her concern that Clifton maintained his morning routine of entering the master bedroom to "mess" with her. She stated that she "knew this would happen" and characterized her request for an order requiring Clifton to move out by June 15th as "being generous."

Johnelle also reenacted the encounter for Officer Boatman. His body camera video shows Johnelle demonstrating how Clifton forced the bathroom door open, she pushed it closed with her hands, and he forced it open again; how Clifton entered the bathroom; and how she pushed him on the shoulder as he proceeded to the closet. She claimed that Clifton pushed her back, telling her to stop touching him. Johnelle then confirmed that she started hitting and scratching him at that point because she "wanted him to leave."

Officer Boatman also testified at trial that he chose to look for injuries on Clifton's face and neck because his story regarding the bathroom encounter was more detailed than Johnelle's. Officer Boatman's body camera video shows his examination of Clifton's injuries. The officers' body camera videos show that Johnelle did not complain of any injuries until after she was handcuffed, at which point she complained her back had been injured. Officer Boatman noted that the timeline of events in Clifton's and Johnelle's stories matched.

The jury found Johnelle guilty of assault family violence. The trial court sentenced Johnelle to 180 days confinement, probated for eight months, and assessed a $180 fine. This appeal followed.

## ANALYSIS

In her first issue, Johnelle contends the evidence is legally insufficient to support the jury verdict. We disagree.

To obtain a conviction for assault family violence, the State was required to prove beyond a reasonable doubt that Johnelle intentionally, knowingly, or recklessly caused bodily injury to a family member, including her spouse. TEX. PENAL CODE ANN. § 22.01(a), (b)(2); *see also Davila v. State*, 346 S.W.3d 587, 591 (Tex. App.—El Paso 2009, no pet.) (listing elements of offense).

We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979); *Fernandez v. State*, 479 S.W.3d 835, 837 (Tex. Crim. App. 2016). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Fernandez*, 479 S.W.3d at 837–38. This standard recognizes "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *see also Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). The fact finder is entitled to judge the credibility of the witnesses, and can choose to

believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) ("The factfinder exclusively determines the weight and credibility of the evidence.").

We defer to the fact finder's determinations of credibility and may not substitute our judgment for that of the fact finder. *Jackson*, 443 U.S. at 319; *Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (when conducting legal sufficiency analysis, "we may not re-weigh the evidence and substitute our judgment for that of the jury"). When there is conflicting evidence, we must presume the fact finder resolved the conflict in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326; *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016). Circumstantial evidence is as probative as direct evidence and, alone, can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise*, 364 S.W.3d at 903.

Johnelle admits that she struck and scratched Clifton but contends that she did so in self-defense. A person is justified in using force against another when and to the degree she reasonably believes force is immediately necessary to protect herself against the other's use or attempted use of unlawful force. *See* TEX. PENAL CODE

–8–

ANN. § 9.31(a). "'Reasonable belief' means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id*. § 1.07(a)(42). "'Unlawful' means criminal or tortious or both and includes what would be criminal or tortious but for a defense not amounting to justification or privilege." *Id*. § 1.07(a)(48).

When an appellant brings a sufficiency challenge on the basis of her claim of self-defense, we do not look to whether the State presented evidence that refuted self-defense. *Gaona v. State*, 498 S.W.3d 706, 709 (Tex. App.—Dallas 2016, pet. ref'd) (citing *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991)). Instead, after reviewing all the evidence in the light most favorable to the verdict, we determine whether any rational trier of fact would have found the essential elements of the offense beyond a reasonable doubt and found against the appellant on the self-defense issue beyond a reasonable doubt. *Id*. The jury resolves any conflicts in the testimony and determines the credibility of the witnesses and the weight to be given to their testimony. *Id*. (citing *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012)). Our duty is to ensure that the evidence the State presented supports the jury's verdict and the State has presented a legally sufficient case of the offense charged. *Id*. (citing *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012)).

Johnelle argues that she acted to protect herself when Clifton tried to force his way into the bathroom. Clifton had already been in the master bedroom where Johnelle was sleeping two times earlier that morning. Johnelle also testified that she

had already kissed the children goodbye before Clifton returned the third time. Thus, she thought he had gotten his shirt from the closet and was surprised and scared when he returned and forced his way into the bathroom.

The evidence, including Johnelle's own statements, contradicts this contention. Specifically, Johnelle told Officer Boatman that Clifton came in to get his clothes and told Officer Nelson that Clifton does the same thing every morning. She also told Officer Boatman that she hit Clifton on the back when he entered the bathroom before he made physical contact with her, and that she started hitting and scratching him to get him to leave. At trial, however, Johnelle testified that she did not hit and scratch Clifton until he restrained her. She said that he did this immediately after entering the bathroom, thus indicating that he was the initial aggressor. Clifton's testimony that Johnelle was the initial aggressor by hitting him in the back and neck, was not only consistent with Johnelle's statement to Officer Boatman but consistent with his own trial testimony. Thus, the jury could reasonably have chosen to believe Clifton's version of the events that took place in the bathroom over Johnelle's.

Additionally, both Johnelle and Clifton acknowledged that Clifton's morning routine involved two trips into the master bedroom suite: first to get his toiletries and undergarments, and again with the children, so Johnelle could kiss them goodbye and he could get his shirt and shoes. Both Johnelle and Clifton acknowledge that one child had slept with Johnelle the night before. Thus, Clifton

had to make three trips to the master bedroom suite, the second trip to get the child who slept there. Clifton alleged he encountered the locked bedroom and bathroom doors on his third trip, with the children in tow. Johnelle testified, however, that she had already kissed the children, who then left, when she locked the doors. Given the evidence shows the children were in the bedroom when the assault took place, the jury could reasonably have chosen to believe Clifton's version of the events, which would indicate that Johnelle knew Clifton would be back for his shirt, having taken only the child with him on his second trip. This would also be consistent with Clifton's testimony regarding his verbal exchange with Johnelle through the bathroom door in which he said he needed to get his shirt and she said "that's too bad. You should have gotten it the first time you were in here."

In order to reach its verdict, the jury was required to resolve the conflict between Johnelle's and Clifton's testimony. According to its verdict, the jury believed Clifton that Johnelle hit him first and injured him, and that Johnelle knew why Clifton was there and was not surprised when he attempted to enter to get his shirt. When there is conflicting evidence, we must presume the fact finder resolved the conflict in favor of the verdict, and defer to that resolution. *Jackson*, 443 U.S. at 326; *Blea*, 483 S.W.3d at 33.

Johnelle also argues that the State failed to disprove facts giving rise to a presumption that her conduct in assaulting Clifton was reasonable. *See* TEX. PENAL CODE ANN. § 2.05(b)(2)(A). According to Johnelle, her conduct was reasonable

given Clifton admitted to "forcibly breaking into the bathroom." She argues that she and Clifton had an agreement that he would occupy the guest bedroom and use the downstairs bathroom while she would occupy and use the master bedroom suite. However, the evidence shows only that Johnelle and Clifton agreed only to continue with their existing living arrangement, which had been in place for the previous year. Under this arrangement, Clifton had kept his toiletries in the master bathroom and his clothes in the master bedroom closet.

"Although the parties may disagree about the logical inferences that flow from undisputed facts, '[w]here there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous.'" *Evans v. State*, 202 S.W.3d 158, 163 (Tex. Crim. App. 2006) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985)). Johnelle has cited no authority supporting the conclusion that the undisputed fact of a victim forcing open a door held closed by a defendant gives rise to only one logical inference that the defendant's use of force is justified as a matter of law, and we are aware of none. Rather, as the State points out, case precedent holds that the forcible opening of a door merely creates a fact question for the jury to decide. *See Semaire v. State*, 612 S.W.2d 528, 531 (Tex. Crim. App. 1980) ("Inasmuch as the appellant expressly denied any intent to harm his wife when he broke into the apartment, the evidence created only a question for the jury on provocation.").

Given there were two permissible views of the evidence, Clifton's forcible entry into the bathroom was merely a fact for the jury to consider in assessing whether Johnelle reasonably believed force was necessary to protect herself. *See id*. As noted previously, there is evidence contradicting Johnelle's claim of surprise and indicating she knew why Clifton had returned to the master bedroom the third time and why he was attempting to enter the bathroom. Regardless, as discussed below, the jury was not instructed on a presumption of reasonableness as to Johnelle's self-defense claim. Thus, on the record before us, we overrule her first issue.

In her second issue, Johnelle contends that the trial court erred in failing to conduct a hearing on her claim of jury misconduct. Throughout trial, the husband of one juror sat in the courtroom gallery. While the State was cross-examining Johnelle, her counsel asked the trial court for the opportunity to question the juror's husband regarding his communications with the juror. The trial court denied the request, and Johnelle complains that she was denied due process and a fair trial as a result. We disagree.

Article 36.22 of the Code of Criminal Procedure states, "No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court." TEX. CODE CRIM. PROC. ANN. art 36.22. The primary purpose of Article 36.22 is to insulate jurors from outside influence. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). The appellant has the burden

to prove jury misconduct. *Id*.; *Hughes v. State*, 24 S.W.3d 833, 842 (Tex. Crim. App. 2000).

Johnelle does not complain on appeal that the trial court denied her motion for a mistrial. Rather, she complains only that the trial court did not conduct an evidentiary hearing on her allegation of jury misconduct. We review the trial court's decision to hold a hearing on jury misconduct allegations for an abuse of discretion. *See Granados v. State*, 85 S.W.3d 217, 236–37 (Tex. Crim. App. 2002) (noting that a hearing to examine a juror accused of misconduct is "permitted but not required" and "the evidentiary rule that allows juror testimony upon allegations of outside influence or lack of qualification to serve is permissive and not mandatory").

On the second day of trial, before Johnelle was called to testify, Johnelle's counsel notified the trial court that she had determined that an individual who had been in the courtroom for the entire proceeding was a juror's husband. Counsel asked to "explore whether or not he heard any of the information that did not go in front of the jury and just to make sure that none of that was disclosed." The trial court called the juror into the courtroom and questioned her regarding counsel's concerns. The juror confirmed that the person in question was her husband; that he was her ride to the courthouse; that she had not spoken with him about the case; and that she had police officers in her family and knew not to discuss cases. She also stated that her husband was hard of hearing, and his hearing aid was not working well. The trial court stated it was satisfied that the juror had not received any

information about the case from her husband, and Johnelle's counsel stated "if there is anything further that we need to put on the record, we actually can do that at a later time."

During the State's cross-examination, Johnelle's counsel asked to put "something" on the record outside the jury's presence. After the jury was removed, Johnelle's counsel asked to call the juror's husband who was sitting the gallery. The following exchange occurred.

The Court: For what would be the purpose of that?

[Counsel]: Well, if we're going to have a hearing outside the presence of the jury, I'm going to make a request that he step out for just a moment.

The Court: For what purpose?

[Counsel]: Because it's not really outside the presence of the jury if the juror – if that information is still available to him.

The Court: Well, do you have any – I mean, do you have any reason to believe that [the juror] is not going to follow my orders to not talk about this case with people outside of the jury?

[Counsel]: Well, I just want a chance to question her husband. . . . I just wanted a chance to question [him] under oath.

The Court: Well, I'm still not understanding the purpose for that. I mean, he has a constitutional right to be in the courtroom. Unless you have a suspicion that something – some juror misconduct is going on –

[Counsel]: Well, I mean, I wouldn't know without asking. I don't know how he's going to respond.

The Court: Okay. I mean, you can certainly talk to [him] at any point that you want to, but I'm not going to allow you to call him up on the record.

[Counsel]: Okay. That's all I had. We can bring the jury back in.

On this record, we cannot say that the trial court abused its discretion in denying Johnelle's request to question the juror's husband. The juror explained why her husband was in the courtroom, why he likely did not hear the evidence presented, and that her respect for the proceedings derived not only from the court's instructions but her family's police service. Additionally, there is no evidence in the record that Johnelle privately questioned the husband or had any evidence contradicting the juror's testimony on which to base her request for the hearing. *Cf. Hughes*, 24 S.W.3d at 841–42 (trial court conducted hearing based on appellant's allegation that he had witnesses who heard the assistant prosecuting attorney tell her investigator that she had a conversation with a juror).

Although Johnelle expressly complains only that the trial court failed to grant a hearing to question the juror's husband, she implies that the trial court also erred in failing to grant a mistrial. Specifically, Johnelle argues that she preserved error by requesting a lesser remedy before requesting a mistrial. Consequently, we address the trial court's denial of her motion for a mistrial.

To preserve error regarding a trial court's denial of a motion for a mistrial, an appellant must have timely and specifically moved for a mistrial. *Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007); TEX. R. APP. P. 33.1. When alleging juror misconduct, an appellant may also preserve error by filing a motion for new trial supported by the affidavit of a juror or some other person who was in a position

to know the facts. *Trout v. State*, 702 S.W.2d 618, 620 (Tex. Crim. App. 1985); *Kelly v. State*, 60 S.W.3d 299, 304 (Tex. App.—Dallas 2001, no pet.).

Although Johnelle's counsel moved for a mistrial in open court immediately after the State rested and the trial court denied her motion for an instructed verdict, she did not specify the grounds for mistrial. When asked whether she had any witnesses to call, counsel stated, "And, Your Honor, move for a mistrial." Similarly, Johnelle filed an unsupported motion for new trial on the grounds that "the verdict is contrary to the law and evidence." Neither of these motions is adequate to preserve error regarding any alleged juror conduct. *See Griggs*, 213 S.W.3d at 927. Accordingly, we overrule Johnelle's second issue.

In her third issue, Johnelle contends the trial court erred in failing to instruct the jury on the presumption of reasonableness as to her self-defense claim. "[A]ll alleged jury-charge errors must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *Id.* If error did occur, whether it was preserved determines the degree of harm required for reversal. *Id.*

If there is error in the trial court's charge but the appellant did not preserve it at trial, we must decide whether the error was "so egregious and created such harm" that appellant did not have a fair and impartial trial—in short, that "egregious harm" has occurred. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza*

–17–

*v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* TEX. CODE CRIM. PROC. ANN. art. 36.19.

The record reflects that Johnelle did not object to the jury charge. At the charge conference, the State requested a statement of law regarding an initial aggressor's ability to claim self-defense, in light of evidence indicating that Johnelle pushed Clifton before he restrained her. Johnelle's counsel objected, arguing that the State's position required a defendant to admit to the crime before seeking a self-defense instruction, and that Johnelle did not admit to being the initial aggressor. Counsel concluded, "[T]hose are the only objections I have to the charge." Johnelle did not object that the charge did not include an instruction on presumption and did not request one.

Because Johnelle has not preserved error, we must determine whether any error in the charge resulted in egregious harm. *Nava*, 415 S.W.3d at 298. Egregious harm "is a difficult standard to meet and requires a showing that the defendants were deprived of a fair and impartial trial." *Id*. "The record must disclose 'actual rather than theoretical harm,' and the error must have affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected a defensive theory." *Id*. (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)). We review "the entire jury charge, the state of the evidence (including the contested issues and the weight of probative evidence), the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole." *Id*. The

purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

Self-defense is the use of force against another person when and to the degree the defendant reasonably believes force is immediately necessary to protect herself against the other's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31(a). A presumption favoring a defendant must be submitted to the jury "if there is sufficient evidence of the facts that give rise to the presumption, . . . unless the court is satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable doubt of the presumed fact." TEX. PENAL CODE ANN. § 2.05(b)(1). Johnelle contends there was some evidence supporting the presumption that she reasonably believed her use of force against Clifton was immediately necessary to protect herself, thus the trial court erred in failing to instruct the jury on this presumption.

As previously discussed, the only evidence supporting Johnelle's self-defense claim was her trial testimony that she was surprised and scared when Clifton forced his way into the bathroom. This testimony, however, was directly contradicted by Johnelle's own statements to police shortly after the incident in which she states that she knew Clifton was attempting to get his shirt from the closet and that she "knew this would happen." Additionally, she and Clifton testified about their verbal exchange through the bathroom door, further demonstrating that she knew why Clifton was attempting to enter the bathroom and contradicting her claim that she

was surprised. Other evidence also reflects that Johnelle knew, as part of their agreed living arrangement, that Clifton's practice was to retrieve his shirt from the closet when he brought the children to say goodbye each morning. Clifton came with the children to the master bedroom for this purpose when the altercation ensued.

Additionally, there is no evidence in the record that Clifton's forceful entry into the bathroom was unlawful. *See* TEX. PENAL CODE ANN. § 1.07(a)(48) (defining "unlawful" as "criminal or tortious"). Johnelle argues that Clifton illegally entered the master bedroom and bathroom with a key. However, there is no evidence in the record of any court order, nor has Johnelle presented any legal authority, that would have prohibited Clifton from accessing these parts of the house on the day in question. *See Walker v. State*, 557 S.W.3d 678, 687 (Tex. App.—Texarkana 2018, pet. ref'd) (locking spouse out of the house did not elevate defendant's right of possession so as to justify the presumption that she reasonably believed deadly force was necessary to stop her spouse as he entered through a window).

There was insufficient evidence to instruct the jury on a presumption that Johnelle's belief that her use of force against Clifton was immediately necessary to protect herself. *See Nava*, 415 S.W.3d at 298.

Even assuming, without finding that the trial court erred by not including a presumption instruction, Johnelle cannot show that she suffered an egregious harm. *See id*. The jury charge included a proper explanation of the applicable law and instructed the jury that it was required to find Johnelle not guilty if it had a reasonable

–20–

doubt that she was guilty of the offense. Although the charge did not include a presumption instruction, the jury could have disregarded any such presumption, if so instructed, if they concluded that (1) Johnelle did not know or have reason to believe that Clifton "unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation"; (2) that she provoked Clifton; or (3) that she was engaged in criminal activity at the time. TEX. PENAL CODE ANN. § 9.31(a).

As previously discussed, the evidence demonstrates that a rational jury could have found that the presumption did not apply because Clifton's entry into the bathroom was not unlawful.

Likewise, a reasonable jury could have found that Johnelle provoked Clifton. Provocation requires that (1) the defendant "did some act or used some words that provoked the attack"; (2) "such act or words were reasonably calculated to provoke the attack"; and (3) "the act was done or the words were used for the purpose and with the intent that the defendant would have a pretext for inflicting harm upon the other." *Elizondo v. State*, 487 S.W.3d 185, 197 (Tex. Crim. App. 2016). The record reflects that Johnelle was unhappy with the agreed living arrangement and the temporary order allowing Clifton to remain in the house until July 1, 2017, because she wanted Clifton out of the house earlier. As shown on Officer Boatman's body camera video, Johnelle claimed she called her family law attorney immediately after the altercation and called her attorney again during Officer Boatman's interview to

have Clifton removed immediately. Clifton also testified that he believed Johnelle was provoking him to "do something stupid" to achieve this goal. However, Johnelle stated that, although tensions had increased, there had never been any violence between her and Clifton.

Neither side mentioned the presumption of reasonableness in their opening statements or their closing arguments. Likewise, neither side mentioned the presumption during the charge conference. Thus, even if the trial court erred by not including the instruction, Johnelle suffered no egregious harm by its omission. *See Nava*, 415 S.W.3d at 298. Accordingly, we overrule Johnelle's third issue.

## CONCLUSION

Having overruled Johnelle's three issues, we affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
180424F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JOHNELLE RENEE HALL,
Appellant

No. 05-18-00424-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court No. 10, Dallas County, Texas Trial Court Cause No. MA17-13792-L.
Opinion delivered by Justice Partida-Kipness. Justices Bridges and Molberg participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 21st day of April, 2020.